# In the United States Court of Federal Claims

### No. 21-935C

### Filed: May 14, 2021
### Redacted Version Issued for Publication: May 21, 2021[1]

| | |
|---|---|
| * * * * * * * * * * * * * * ** | * |
| **RANGER AMERICAN OF PUERTO RICO, INC.,** | * |
| | * |
| Protestor, | * |
| | * |
| v. | * |
| | * |
| **UNITED STATES,** | * |
| | * |
| Defendant, | * |
| | * |
| | * |
| v. | * |
| | * |
| **AGMA SECURITY SERVICE, INC.,** | * |
| | * |
| Defendant-Intervenor. | * |
| * * * * * * * * * * * * * * ** | * |

    **Jonathan D. Shaffer**, Smith Pachter McWhorter PLC, Tysons Corner, VA for protestor. With him was **Todd M. Garland,** Smith Pachter McWhorter PLC, Tysons Corner, VA.

    **Bryan M. Byrd,** Department of Justice, Washington, DC, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant. With him were **Kara M. Westercamp**, Trial Attorney, **Elizabeth M. Hosford**, Assistant Director, Commercial Litigation Branch, and **Brian Boynton,** Acting Assistant Attorney General, Civil Division. Of counsel was **Matthew Lane**, Office of Chief Counsel, Procurement and Fiscal Legal Division, Federal Emergency Management Agency.

    **Alan M. Grayson,** Windermere, FL for intervenor.

---

[1] This Opinion was issued under seal on May 14, 2021. The parties were asked to propose redactions prior to public release of the Opinion. This Opinion is issued with the redactions that the parties proposed in response to the court's request and other conforming redactions. Words which are redacted are reflected with the notation: "[redacted]."

**O P I N I O N**

<u>HORN, J.</u>

In the above-captioned, pre-award bid protest, protestor Ranger American of Puerto Rico, Inc. (Ranger American of Puerto Rico) challenged the decision of the Federal Emergency Management Agency (FEMA) to set aside Solicitation No. 70FBR221R00000007 (the Solicitation) as a small business set-aside. The Solicitation explained "[t]his requirement is for contracted Protective Service Officers (PSO) and Patrolled Services to safeguard federal employees, visitors and property at both temporary and fixed facilities during disaster and emergency declarations for DR-4339 (all counties and municipalities within the Commonwealth of Puerto Rico)." (capitalization in original). This Opinion memorialized the oral decision issued by the court given the urgency represented by FEMA. The decision denied protestor's motion for judgment on the Administrative Record, as well as protestor's request for injunctive relief, and granted defendant's and intervenor's motions for judgment on the Administrative Record.

**FINDINGS OF FACT**

The above captioned bid protest is the latest in a series of four protests involving FEMA, AGMA Security Service, Inc. (AGMA), and Ranger American of Puerto Rico, regarding contracted Protective Service Officers and Patrolled Services in Puerto Rico, first at the United States Government Accountability Office (GAO), and now the third in the series of protests, steps and missteps by the agency at the United States Court of Federal Claims regarding a FEMA contract for armed security services in Puerto Rico. The facts and procedural history are set out in the court's December 29, 2020 Opinion in Case No. 20-926C, and the court's March 5, 2021 Opinion in Case No. 21-740C, which are incorporated into this Opinion. Key relevant facts in the continuing saga of FEMA's attempts to award a contract over the course of three calendar years are restated below.

On November 19, 2019, FEMA issued Request for Proposal No. 70FBR220R00000002 (RFP) for "contracted Protective Service Officers (PSO) and Patrolled Services to safeguard federal employees, visitors and property at both temporary and fixed facilities during disaster and emergency declarations for DR-4339 (all counties and municipalities within the Commonwealth of Puerto Rico)." Ranger American of Puerto Rico was the incumbent contractor for the predecessor contract which provided the same armed security services for FEMA in Puerto Rico.

FEMA conducted market research for the 2019 RFP, including whether the 2019 RFP should be set aside for small business offerors or should be unrestricted. FEMA's Small Business Review Form noted that "[t]he Contractor shall be able to provide 600+ guards to cover locations in all municipalities of the U.S. Territory of Puerto Rico. The contractor must perform duties/tasks necessary to provide Protective Security Officers (PSOs) for physical security services throughout the entire island of Puerto Rico." The Small Business Review Form also indicated that the estimated dollar value of the base period was $[redacted], and the total estimated value including the five option periods

was $[redacted]. The Small Business Review Form checked the box to issue the 2019 RFP as an unrestricted RFP and indicated "[n]o reasonable expectation that offers will be obtained from at least two 8(a), HubZone small, Service Disabled Veteran Owned Small, Economically Disadvantaged Women-Owned Small Business, Women-Owned Small Business, or general Small Business concerns offering the products of different small business concerns." Additionally, the Market Research Report supported the decision to issue the 2019 RFP as an unrestricted RFP, explaining that "[t]here are various providers in the island of Puerto Rico, but only few have experience with the Federal Government with the required capabilities to respond to large staffing. Small business [sic] cannot handle staffing requirement," and "[b]ased on our research only two companies have the capabilities to respond to our request since the requirement is for 600+ Armed Guards making it only achievable by medium/large businesses."

The 2019 RFP indicated that "[t]he Government intends to award a Labor Hour type contracts [sic] resulting from this solicitation to the responsible offerors whose offers, conforming to the solicitation, are most advantageous to the Government, price and other factors considered. Award will be made to the responsive, responsible contractor who provides the best-valued solution to the Government." The period of performance was a one year base period, and then a one-year option period and sought a maximum of 590,400 annual labor hours of armed security guard services. The 2019 RFP explained:

> The acquisition and source selection are being conducted in accordance with the procedures of Federal Acquisition Regulation (FAR) Parts 12 and 15. The acquisition will be conducted using Best Value as the evaluation methodology. Proposals will be evaluated and rated but not ranked using the non-price factors listed below. A rating of "Unacceptable" in any of the below technical factors will render the entire proposal technically unacceptable and, therefore, not eligible for award.
>
> 1. Work Plan
> 2. Project Management Plan
> 3. Quality Control Plan
> 4. Past Performance
> 5. Price[.]

Additionally, the 2019 RFP included a "Local Area Documentation Requirement" which required any offeror to represent "that it does reside or primarily do [sic] business in the set-aside area." Protestor (AGMA and intervenor Ranger American of Puerto Rico were among nine offerors which submitted timely proposals to FEMA in response to the 2019 RFP, and per the requirements of the 2019 RFP, AGMA and Ranger American of Puerto Rico both indicated "the offeror represents that it does reside or primarily do [sic] business in the set-aside area." AGMA and Ranger American of Puerto Rico both submitted supporting documentation to that effect with their proposals.

After the Source Selection Evaluation Board (SSEB) completed the evaluation of the proposals, on March 3, 2020, the contracting officer issued an initial Award Decision

Memorandum, which summarized the background of the procurement and the evaluations of the SSEB, and included a technical evaluation, price evaluation, a best value analysis and finally an award decision to AGMA. The initial Award Decision Memorandum included four charts for a summary of the technical ratings: a rating chart, an empirical values rating chart, a ratings chart breakdown, and the overall rating range. The four charts provided:

Summary of Technical Ratings
Table 1

**RATING CHART**

| Offeror: | Factor 1 | Factor 2 | Factor 3 | Factor 4 | *Overall Factor Rating* |
|---|---|---|---|---|---|
| Offeror 1: [redacted] | Unsatisfactory | Unsatisfactory | Unsatisfactory | Neutral | **Unsatisfactory** |
| Offeror 2: Agma Security Service Inc. | Good | Satisfactory | Satisfactory | Neutral | **Satisfactory** |
| #3 Offeror 3: [redacted] | Unsatisfactory | Unsatisfactory | Unsatisfactory | Neutral | **Unsatisfactory** |
| Offeror 4: [redacted] | Unsatisfactory | Unsatisfactory | Marginal | Neutral | **Unsatisfactory** |
| Offeror 5: [redacted] | Unsatisfactory | Unsatisfactory | Unsatisfactory | Satisfactory | **Unsatisfactory** |
| Offeror 6: Ranger American | Good | Good | Good | Good | **Good** |
| Offeror 8: [redacted] | Marginal | Satisfactory | Satisfactory | Satisfactory | **Satisfactory** |
| Offeror 9: [redacted] [2] | Marginal | Marginal | Marginal | Satisfactory | **Marginal** |

---

[2] The SSEB explained that: "During the initial screening, Offeror 7 [redacted] was deemed ineligible for award. Offeror does not reside or primarily doing [sic] business in the disaster

4

Table 2

| EMPIRICAL VALUES RATING CHART | | | | | | |
|---|---|---|---|---|---|---|
| *Offeror:* | *Factor 1* | *Factor 2* | *Factor 3* | *Factor 4* | *Total Empirical Value* | *Converted Empirical Value to Overall Rating* |
| #1 | 1 | 1 | 1 | 0 | **3** | Unsatisfactory |
| #2 [AGMA] | 4 | 3 | 3 | 0 | **10** | Satisfactory |
| #3 | 1 | 1 | 1 | 0 | **3** | Unsatisfactory |
| #4 | 1 | 1 | 1 | 0 | **3** | Unsatisfactory |
| #5 | 1 | 1 | 1 | 2 | **5** | Unsatisfactory |
| #6 [Ranger] | 4 | 4 | 4 | 4 | **16** | Good |
| #8[redacted] | 1 | 3 | 3 | 2 | **9** | Satisfactory |
| #9[redacted] | 1 | 1 | 1 | 2 | **5** | Marginal |

Table 3

| RATING CHART BREAKDOWN | | | |
|---|---|---|---|
| *Factors 1 - 3* | *Numerical Rating* | *Factor 4* | *Numerical Rating* |
| Superior | 5 | | |
| Good | 4 | Superior | 3 |
| Satisfactory | 3 | Satisfactory | 2 |
| Marginal | 1 | Unsatisfactory | 1 |
| Unsatisfactory | 1 | Neutral | 0 |

Table 4

| OVERALL RATING RANGE | |
|---|---|
| *Overall Rating* | *Rating Range* |
| Superior | 18 |
| Good | 14 to 17 |
| Satisfactory | 10 to 13 |
| Marginal | 6 to 10 |
| Unsatisfactory | 3 to 5 |

(all capitalization and emphasis for all charts in original; brackets added). Although the 2019 RFP makes no mention of an "empirical values ratings" system, the contracting officer included the empirical values ratings chart in the initial Award Decision Memorandum and changed the rating chart, as shown in Table 1, into the empirical values

area in accordance with FAR 52.226-3 Disaster or Emergency Area Representation and therefore were [sic] not evaluated."

ratings, the rating chart breakdown, and the overall rating range, as indicated in Tables 2, 3, and 4.

The initial Award Decision Memorandum concluded:

AGMAs overall rating is Satisfactory on both technical and past performance. Although Ranger received a rating of Good. Contracting Officer determined that there was no rational that substantiates paying a higher price to Ranger when the same services could be provided from AGMA. . . . AGMA's proposal offers the best overall value to the Government and price is determined to be fair and reasonable.

On March 13, 2020, FEMA made the award to AGMA, and notified Ranger American of Puerto Rico of the same. Ten days later on March 23, 2020, Ranger American of Puerto Rico filed a protest at the GAO. In response to Ranger American of Puerto Rico's protest, on April 13, 2020, FEMA notified GAO that the agency intended to take corrective action, and on April 15, 2020, GAO issued a decision which stated, in part: "We dismiss the protest based on the corrective action taken by the agency."

On June 15, 2020, the contracting officer issued a Revised Award Decision Memorandum, albeit without seeking revised proposals. In the Revised Award Decision Memorandum, the contracting officer indicated that

The Solicitation stated that technical factors would be more important than price. Offeror 6 (Ranger) had a 50% higher technical score than AGMA and only a 20% higher price. Ranger had a higher rating with regard to the Project Management Plan, Quality Control Plan, and Past Performance. While Offeror 2's (AGMA) proposal was perfectly adequate, Offeror 6's (Ranger) was significantly better.

For the award decision, the contracting officer concluded:

Based on the integrated assessment of all proposals in accordance with the specified evaluation factors, it is hereby recommended that the award be made to Ranger under contract No. 70FBR220C00000019. Ranger's proposal is significantly stronger and offers the best-valued solution to the Government, and the price is determined to be fair and reasonable.

The same day the contracting officer issued the Revised Award Decision Memorandum, June 15, 2020, the contracting officer made the award to Ranger American of Puerto Rico. On June 23, 2020, FEMA terminated for convenience AGMA's previously awarded contract, after the contracting officer awarded the contract to Ranger American of Puerto Rico.

On July 29, 2020, AGMA filed a bid protest complaint in this court, as well as a motion for injunctive relief. AGMA argued that "FEMA improperly accepted Ranger's

certification as a local firm, and FEMA should have rejected Ranger's proposal on this basis" as a violation of the Stafford Act, 42 U.S.C. § 5150, et seq. Protestor AGMA also argued "FEMA improperly reevaluated the Ranger and AGMA proposals, and decided to terminate the AGMA Contract and make award to Ranger." Therefore, AGMA contended FEMA's award to Ranger American of Puerto Rico "was arbitrary, capricious, an abuse of discretion, contrary to law and without the procedures required by law."

On December 29, 2020, the court issued a decision in Case No. 20-926C. See generally AGMA Sec. Serv., Inc. v. United States, 152 Fed. Cl. 125 (2020). The court determined that "Ranger American of Puerto Rico's representations were sufficient to meet the requirements of the Stafford Act and FEMA acted reasonably to rely on those representations." Id. at 154. Regarding FEMA's evaluations after the corrective action, however, the court determined

> at no point, after the corrective action was undertaken did the contracting officer explain why the corrective action and the revised evaluations were occurring, why revisions of proposals were not required by agency, why particular evaluation revisions were undertaken by the agency, or what was wrong with the previous evaluation. Taken as a whole, the actions taken by the contracting officer after the corrective action are considered by the court to be arbitrary and capricious.

Id. at 170. Therefore, the court granted AGMA's motion for injunctive relief on December 29, 2020. See id. 175. Given the history of the protests at the GAO and the Court of Federal Claims and defendant's represented importance of the need to keep Protective Services Officers and Patrolled Services in Puerto Rico, the discussions and questions at the hearings and oral argument prior to the court's decision in Case No. 20-926C, FEMA could well have anticipated that a bridge contract might be necessary given the numerous protests. Despite this, as explained in a January 19, 2021 declaration of Contracting Officer Carolyn Knight,

> because the time between December 31, 2020 and January 8, 2021 was insufficient for a full and open competition for a new solicitation, and there was no contract vehicle currently in place, the Agency determined that a short-term bridge contract would be required to prevent a lapse in services and the catastrophic damage that such a lapse would cause. The decision to move forward in this manner was made late in the day on December 31, 2020, and required consultation with the contract team. The next day, January 1, 2021 was a Federal holiday. The contract team began work on plans for a sole source contract on Monday, January 4, 2021, pursuant to 41 U.S.C. § 3304(a)(2), which permits a sole source award when there is an unusual and compelling urgency and the Government would be seriously injured unless the Agency is permitted to limit the number of sources from which it solicits proposals.

(capitalization in original).

After the court's December 29, 2020 Opinion, FEMA decided to issue a sole source bridge contract to Ranger American of Puerto Rico. Contracting Officer Carolyn Knight indicated in her declaration that "[o]n January 5, 2021, I sought a proposal from Ranger [the entity performing the requirement at the time] to provide services for the bridge contract. Ranger responded with a proposal on January 6. I determined that Ranger's prices were acceptable and the Bridge Contract was executed with Ranger on January 7," 2021. The sole source bridge contract was for a term of 150 days[3] at a cost of $2,367,751.50. Like the previously enjoined procurement, the sole source bridge contract continued to solicit for a requirement of "600+ armed guards," unlike the procurement that FEMA intended to solicit to replace the sole source bridge contract which was being planned by FEMA to have a requirement of fewer than 200 armed guards.

On January 11, 2021, Tyuana L. Bailey, the Procuring Activity Advocate for Competition, signed a "Justification and Approval for Other Than Full and Open Competition" (Sole Source Justification) for the sole source bridge contract award to Ranger. The Sole Source Justification for the sole source bridge contract began:

Pursuant to the requirements of 41 U.S.C [sic] [§] 1901 as implemented by the Federal Acquisition Regulation (FAR) Subpart 13.501(a) and in accordance with the requirements of FAR 13.501(a)(ii), the justification for the use of the statutory authority follows:

**1. Agency and Contracting Activity.** The Department of Homeland Security, Federal Emergency Management Agency (FEMA), Office of the Chief Procurement Officer (OCPO), proposes to enter a contract on a basis other than full and open competition.

*2.* **Nature and/or Description of the Action being Approved.** *A short paragraph or two describing the effort to be placed on contract, or the modification action. This section should include all of the following information:*

(a) The FEMA requires the provision of a short-term bridge contract for continued Armed Security Guard Services in support of the FEMA's Recovery mission, Disaster (DR)-4339-Puerto Rico (PR). The contractor shall perform duties/tasks necessary to provide Protective Service Officers (PSO)s for physical security services throughout the entire island of Puerto Rico including municipalities of Vieques and Culebra.

. . .

---

[3] On January 21, 2021, a bilateral modification of the sole source bridge contract was executed which reduced the term of the bridge contract from 150 days to 60 days, with three, 30 day option periods so that if all the options were to be exercised, the length of the sole source bridge contract ultimately would be 150 days.

*3.* **Description of Supplies/Services.** *Describe the supplies or services to be acquired. Include the purpose the supplies or services are intended to fulfill or the function the supplies or services provide.*

The requirement is to provide continued Armed Security Guard Services through the provision of Protective Service Officers (PSOs). The contractor shall perform duties/tasks necessary to provide PSOs for physical security services throughout the entire island of Puerto Rico including municipalities of Vieques and Culebra. Patrol vehicles shall be provided, when required by FEMA, based on location characteristics, vulnerabilities and risks. The period of performance will be 150 calendar days.

**4. Identification of Statutory Authority Permitting Other Than Full and Open Competition.**

The statutory authority permitting other than full and open competition is 41 U.S.C. [§] 1901 implemented by the FAR Subpart 13.501(a), Special documentation requirements, Sole source acquisitions. The limitation on the period of performance of 150-day at HSAR [Homeland Security Acquisition Regulation] 3006.302-270 applies.

(capitalization and emphasis in original) (brackets added). The Sole Source Justification continued:

*6.* **Demonstration that the proposed contractor's unique qualifications or the nature of the acquisition requires use of the authority cited**. *This paragraph is one of the most important parts of the J&A [Justification & Approval] and should clearly identify why the proposed action must be accomplished through other than full and open competition. Provide a well-reasoned, detailed discussion of the issue that will make it clear to someone who is unfamiliar with your organization or your requirement why full and open competition cannot be used for this procurement. The following information must be included:*

The proposed contractor, Ranger, is currently performing the services required effectively and satisfactorily under contract 70FBR220C00000019. Given the short timeline at issue, a transition to another contractor would introduce unnecessary risks and uncertainties that would be detrimental to the interests of the government.

(a) Rationale for using the authority cited in section 4 of the J&A;

Due to the Court of Federal Claims (COFC) ruling in response to the protest submitted by the contractor AGMA against the award of the existing FEMA contract with the contractor Ranger, the use of other than full and open competition is required to award a short-term Firm Fixed Price, Labor Hour (FFP, LH) bridge contract in order to provide continued Armed Security

Guard Services in support of the FEMA's Recovery mission, Disaster (DR)-4339-Puerto Rico (PR). The ruling enjoins FEMA from continuing the performance of the contract currently in place to provide these services as of January 8, 2021. The ruling states that AGMA "has been deprived the opportunity to compete fairly for a contract." In order to correct this harm, a new contract under a full and open competition procedure will be awarded. However, continued services are required to maintain the safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR. Based on the COFC ruling, a nine-day acquisition timeline to solicit and award a new contract under full and open competition procedures is unattainable.

(b) Details covering what events lead to the situation requiring use of other than full and open competition procedures including whether any portion of the work can be segregated to allow for competition;

On December 30, 2020, the FEMA received notification of the COFC ruling in response to the protest submitted by AGMA against the award of contract 70FBR220C00000019 to Ranger in response to solicitation 70FBR220R00000002. The ruling required the FEMA end the current contract awarded to Ranger by January 8, 2021. Therefore, due to extraordinary limitation in acquisition lead time, there is not any portion of the work that can be segregated to allow for competition. However, this short-term contract is being sought to allow adequate acquisition lead time to solicit an award under full and open competition procedures with limitations to local area set aside under the Stafford Act.

(c) Summarize alternatives considered and why they will not work; and

Due to the acquisition lead time limitation, the only other alternative considered was to award a short-term sole source contract to AGMA. However, it was considered in the best interest of the FEMA to award a short-term contract to the existing contractor, Ranger, since the contractor was already in place effectively and satisfactorily performing. Moreover, the lack of adequate time to both award to AGMA and transition from Ranger poses substantial risk to continuity of operations; therefore, increasing risk to safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR. The risk is viewed as detrimental to the interests of the government. Because the current Ranger contract must be terminated and the previous AGMA contract was terminated, there is no existing vehicle by which the FEMA can obtain these services and no legal method by which the Agency could reinstate either contract.

(d) Impact to the mission that would result if the J&A is not approved and, consequently, the product or service not provided.

See Section b above.

(capitalization and emphasis in original).

The Sole Source Justification also stated:

**7. Description of Efforts Made to Ensure that Offers are Solicited from as Many Potential Sources as is Practicable.**

Offerors will be solicited from as many potential sources as possible under the new solicitation that will be posted to the Contract Opportunities of beta.SAM.gov as required by FAR 5.201 a synopsis. In the case of this unusual and compelling urgency requirement, posting will be made within 30 days after contract award, in accordance with 6.305 procedures at paragraphs (b), (d), (e), and (f).

**8. Determination by the Contracting Officer that the Anticipated Cost to the Government will be Fair and Reasonable.**

The contracting officer will determine that the anticipated price(s) will be fair and reasonable based on a comparison of the contractor labor costs proposed to the costs paid for services under current competed contract and previous historical awards for similar contracts and labor categories.

**9.** **Description of Market Research.** *Market research is required by FAR Part 10, and the results of the market research should be summarized here. Include the following information:*

Market research was not conducted as the Government determined that the time period from the previous market research current and relevant within 18 months. The market research is available under solicitation 70FBR220R00000002.

**10.** **Any Other Facts Supporting the Use of Other Than Full and Open Competition.** *This section presents an opportunity to strengthen the justification by presenting supplemental or supporting information. Do not summarize or duplicate information already stated in previous sections. This section should include information such as:*

NONE[.]

(capitalization and emphasis in original).

As explained in Contracting Officer Carolyn Knight's January 19, 2021 declaration:

> Because the market research from the previous solicitation[4] remained accurate and had been conducted within 18 months, in accordance with FAR 10.002(b)(1), we did not conduct new market research. According to the market research, a number of contractors could theoretically provide armed guard services, including Ranger, AGMA, and other offerors from the previous solicitation. I had also been informed that AGMA's attorney had indicated that his client was "ready, willing and able to perform the requirement at issue." The contract team discussed internally whether it was practicable to ask any or all of those offerors for proposals. In making our decision that it was not practicable to ask other offerors for proposals, we considered that, in this case, a contractor's subjective belief that it is ready to perform is not indicative of whether that contractor could have security guards in place on the ground at sites quickly enough to prevent a lapse during a very short transition period. The contractor must compile a list of proposed security guards that are available and willing to work for that contractor on the contract. Then, the contractor must submit that list to FEMA. FEMA's Office of the Chief Security Officer (OSCO) then must complete an approval process for each of these proposed guards that includes a full background check. That process takes, on average, two weeks, but can be longer for some proposed guards who are required to answer additional questions or present additional documentation.

(capitalization in original). The declaration of Ms. Knight stated further:

> Even if the approval process could be expedited for AGMA employees that had previously been approved, we determined that this still would not be sufficient. OCSO [Office of Chief Security Officer] had previously vetted 137 AGMA employees, who remained active until July 2020. The work is currently being performed by at least 190 Ranger employees. Even if that reduced number of AGMA employees could have been sufficient, the following would have been required to ensure that the 137 employees would be in place by midnight on January 7: (1) ascertainment and confirmation within 24 hours (January 4-5) that all 137 of those employees identified six months ago are still available; and (2) completion of the OSCO approval process within 48 hours (January 5-7), rather than the standard two weeks in order to have those employees in place by midnight on January 7. Although it is technically possible that these requirements could have been fulfilled, it created an unacceptable risk that there would be a lapse of services during the transition.

> Although AGMA (or any other number of offerors) may have been capable of performing the contract, the truncated transition time created an

---

[4] Contracting Officer Carolyn Knight is referring to the 2019 RFP, issued on November 19, 2019.

unacceptable level of risk that there could not be a smooth transition and that the Agency would be left without services for a period of time after January 8. Even if a contractor like AGMA could move quickly, the two-week OCSO approval process would be extremely problematic. For example, if AGMA had given the Agency a list of employees on January 5, it likely would have taken OCSO until at least January 18 (or possibly longer) to vet and approve the available employees. And the only representation we had from AGMA's attorney was that his client was "ready, willing, and able" to perform, but he did not include any other information or documents that actually indicated a certainty that his client could perform, such as providing a list of available employees or showing any affirmative steps that his client had taken to expedite the transition process. Thus, we determined that it was not practicable to seek proposals from anyone other than the incumbent.

(capitalization in original). Ms. Knight concluded:

> Even with a longer transition period from the Court's enjoining of Ranger's continued performance of the Ranger Contract to award of the bridge contract, rather than the six business (nine calendar) days permitted, FEMA likely would have still awarded the bridge contract to the incumbent, Ranger, regardless of whether it had received a lower-priced proposal from another contractor, like AGMA. The incumbent was performing the services required effectively and satisfactorily and any transition creates risk of catastrophic consequences for the entire Puerto Rico recovery effort. FEMA must balance this risk with the need for full and open competition in the procurement process. Because this is a short-term bridge contract that is only intended to allow for a full and open competition for a longer-term award, the Government in this situation is best served by avoiding the unnecessary risk of an additional transition and providing a full and open competition for all contractors to compete for the longer-term contract as soon as possible.

After the award of the sole source bridge contract to Ranger American of Puerto Rico, on January 13, 2021, AGMA filed another protest, this time a post-award bid protest on the sole source award to Ranger American of Puerto Rico in the United States Court of Federal Claims alleging FEMA had made an improper sole source award to Ranger American of Puerto Rico for the bridge contract. In In its motion for judgment on the Administrative Record, protestor AGMA argued that in making the sole source award to Ranger American of Puerto Rico, FEMA had not complied with 41 U.S.C. § 3304. AGMA urged that it had consistently represented to FEMA that it stood ready and able to perform and had been qualified and chosen by FEMA to perform the initial award, albeit that award was terminated for convenience after the corrective action following the GAO protest. Ranger American of Puerto Rico and defendant filed cross-motions for judgment on the Administrative Record and argued that if the court granted an injunction, the FEMA facilities in Puerto Rico would be without armed security services," which were essential

to Puerto Rico and its safety. Defendant also argued that FEMA's decision to award a short-term bridge contract to Ranger American of Puerto Rico was reasonable.

On March 5, 2021, the court issued a decision on the sole source bridge contract. See generally AGMA Sec. Serv., Inc. v. United States, No. 21-740C, 2021 WL 1011210 (Fed. Cl. Mar. 4, 2021). The court first noted that

> [r]ather than taking any responsibility for the agency's improper actions, the premise of the defendant's cross-motion for judgment on the Administrative Record is that the urgency for the sole source bridge contract award was caused by the timing of the December 29, 2020 decision. Once the court concluded, however, that the agency had acted unreasonably and improperly, the issue became, given the lengthy history of the procurement at the GAO and at the court, should the agency not have been planning for all eventualities, including a possible sole source procurement, especially given the discussions with the parties and concerns raised by the court at the various hearings, including oral argument, suggesting serious concerns regarding the previous procurement protested by AGMA.

> . . .

> The court believes the limited amount of time between the date of the decision and the injunctive effective date cannot be the only reason for the sole source to be released in the way it was issued. The court notes if the agency was that concerned, FEMA could have requested the Department of Justice file a motion to stay the injunction to allow FEMA to issue a negotiated bridge contract. Moreover, the agency could have and should have prepared for a possible negative result in Case No. 20-926C, given the discussions at the various hearings with the parties and the court after the protest was filed and been in a better position to move forward appropriately.

AGMA Sec. Serv., Inc. v. United States, No. 21-740C, 2021 WL 1011210, at *19-20. Regarding the agency's justification, the court explained:

> Specifically, the Sole Source Justification & Approval's rationale for the sole source comes almost entirely from paragraph 6 above, and focuses on the urgency of a quick award, rather than the merits of why the sole source decision was proper. As noted above, AGMA argues that in order to rely on urgency, pursuant to 41 U.S.C. § 3304(a), "the executive agency's need for the property or services is of such an unusual and compelling urgency that the Federal Government would be seriously injured unless the executive agency is permitted to limit the number of sources from which it solicits bids or proposals." Id. FEMA, however, provided no explanation why it would be "seriously injured" to have received a proposal from AGMA and AGMA had independently contacted the agency and represented that it was ready to perform. The Sole Source Justification & Approval only states:

> Due to the acquisition lead time limitation, the only other alternative considered was to award a short-term sole source contract to AGMA. However, it was considered in the <u>best interest</u> of the FEMA to award a short-term contract to the existing contractor, Ranger, since the contractor was already in place effectively and satisfactorily performing. Moreover, the lack of adequate time to both award to AGMA and transition from Ranger poses substantial risk to continuity of operations; therefore, increasing risk to safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR.

(emphasis added). There is no explanation for the FEMA to rely on the "best interest of the FEMA" to justify the sole source award, and notably, neither defendant nor intervenor attempt to defend or even explain the "best interest" standard in addition to the safety concerns expressed. The fact that Ranger American of Puerto Rico was "already in place effectively and satisfactorily performing" cannot alone justify not even considering a proposal from AGMA. Although the post sole source decision declaration of the contracting officer Ms. Knight is more descriptive, even the declaration, prepared after the above captioned bid protest was filed, does not offer a sufficient explanation for why AMGA was not given an opportunity to submit a proposal as offered by AGMA, a previous awardee for the same services.

<u>AGMA Sec. Serv., Inc. v. United States</u>, 2021 WL 1011210, at *20. The court also noted that "Protestor has consistently contended that 'AGMA is ready, willing and able to perform this requirement, under either the AGMA contract award or under a new award, for substantially less than the posted award price to Ranger.'" <u>Id.</u> at *8.

The court concluded that

> [a]fter careful review of the Administrative Record, including the Sole Source Justification & Approval and even considering the contracting officer's post-award declaration, the court concludes that there is not enough evidence to demonstrate that the agency did enough to justify the sole source bridge contract award. Therefore, FEMA acted arbitrarily and capriciously when it awarded the sole source bridge contract to Ranger American of Puerto Rico. The agency did not follow the requirements of 41 U.S.C. § 3304 when it issued the Sole Source Justification & Approval. In sum, FEMA's sole source award lacked a rational basis.

<u>AGMA Sec. Serv., Inc. v. United States</u>, 2021 WL 1011210, at *26.

15

The court also considered if AGMA had a substantial chance to receive the award, absent the agency's error. The court concluded "[a]lbeit unusual for a sole source award, the prior solicitation process and previous bid protest in this court demonstrates AGMA had a substantial chance of AGMA receiving the award, absent the agency's error." Id. at *28. The court reasoned:

> The services required in the sole source contract were the same as at issue in the prior solicitation, which the court has determined AGMA had a substantial chance of receiving an award, absent the agency's errors. Therefore, given that the court determination that AGMA had a substantial chance of receiving an award previously, the court likewise concludes that AGMA could have competed or should have been given a chance to compete for the requirement if FEMA had made the bid process competitive for the requirement at issue in the above captioned protest. See Myers Investigative & Sec. Servs. v. United States, 275 F.3d at 1370.

AGMA Sec. Serv., Inc. v. United States, 2021 WL 1011210, at *30. Therefore, the court granted AGMA's motion for injunctive relief regarding the sole source award. In the court's decision, however, the court noted:

> After consultation with the parties, and based on representations made by the government to the court at the oral argument, including that a 30 day transition period is required after award of the subsequent competitive procurement, and in order not to cause a disruption of security services in Puerto Rico, the injunction shall be effective on **Monday, April 5, 2021.**

Id. at *33 (emphasis in original).

After the court's December 29, 2020 Opinion, FEMA decided to issue Solicitation No. 70FBR221R00000007 (the Solicitation) "as a means to transition the services to a long-term contract vehicle." On February 14, 2021, FEMA issued solicitation No. 70FBR221R00000007 for the contracted Protective Services Officers and Patrolled Services for Puerto Rico, with proposals due by February 18, 2021, 10:00 a.m. The Solicitation was the third, different procurement vehicle FEMA had used to contract for the services since 2019. This time, the Solicitation sought a maximum of 202,940 labor hours of guard services per year, far less than the maximum included in the 2019 RFP, due to the closure of multiple facilities and this time the Solicitation was issued as a set-aside for businesses that qualified as small under North American Industrial Classification System (NAICS) code 561612.

In determining that the Solicitation could be a small business set-aside, FEMA relied on a Small Business Review Form, Form 700-22, dated January 26, 2021 and the Market Research Report, Form 700-22, dated January 20, 2021. On the Form 700-22, FEMA checked the box indicating this was a new requirement described the Solicitation as "for Armed Security Guard Services (Protective Services Officer PSO) and Patrolled Services to safeguard federal employees, visitors and property at both temporary and fixed facilities during disaster and emergency declarations for DR-4339 (all counties and

16

municipalities within the Commonwealth of Puerto Rico)." Form 700-22 also indicated that the estimated dollar value of the base period was $[redacted] , and the total estimated value including the four option periods was $[redacted]. The Market Research Report stated:

> Since the current requirement is similar to the previous contract awarded in 2020, the Program Office used the following information from the previous Market Research: There are 47 companies registered in SAM that are scheduled as Security Services companies. Eleven were researched, including the current contract vendors. Four were not in business. One was not interested because of lack of resources to provide the requirement. One did not respond to our request for information. Only three companies responded to our request including the current two contractors.

> Based on the responses to the prior solicitation, there were three responsible small businesses that responded that could have performed the work. Two received technical ratings of acceptable and one received a technical rating of marginal. All offered fair market prices. The previous requirement was for 600+ armed guards. Due to the closure of multiple facilities, the current requirement is significantly smaller, requiring fewer than 200 armed guards. Because there were three small businesses that could have performed the requirement with over 600 armed guards at fair market prices, we have a reasonable expectation that for this significantly smaller requirement offers will be obtained from at least two responsible small business concerns and that award will be made at fair market prices.

The checklist in the Market Research Report reflected that FEMA had reviewed "[o]ther recent market research," specifically the "2020 MR [market research] for Guard services in DR4339PR;" or the previous 2019 RFP, Request for Proposal No. 70FBR220R00000002, as well as "[i]nterviewed knowledgeable individuals in industry;" and "[i]nterviewed knowledgeable individuals in Government," including "Experienced Security Managers and FEMA HQ SMEs [small and medium-sized enterprises]." (capitalization in original).

On February 17, 2021, the day before proposals were due for solicitation No. 70FBR221R00000007, this time, Ranger American of Puerto Rico timely filed a pre-award protest in this court. Ranger American of Puerto Rico's complaint sought injunctive relief asking the court to force FEMA "to comply with statutory requirements for full and open competition," "enjoin FEMA from making award and then direct FEMA to remove the restrictions limiting the competition for the protested procurement to only small businesses and for FEMA to then request proposals based on the amended solicitation." Ranger American of Puerto Rico's complaint included two counts, first, alleging that "FEMA's decision to conduct the procurement as a small business set-aside was contrary to law and was unreasonable," and alleged

FEMA at that time was required to have determined that a "fair proportion" of the relevant industry category for the services at issue here was placed with small business concerns. No changes in the industry or competition have affected this result. Agency action is disparate and arbitrary when an agency treats the same situation differently. FEMA's decision to reverse course and set-aside the current solicitation is the result of disparate treatment contrary to CICA and the FAR.

(capitalization in original). The second count of Ranger American of Puerto Rico's complaint alleged "FEMA's decision to conduct this procurement as a small business set-aside was arbitrary, capricious, and an abuse of discretion, and violated the applicable FAR provisions."

After the court held an initial hearing on February 18, 2021, the defendant filed a motion to voluntarily remand on February 22, 2021, proposing to conduct "additional market research to determine whether the requirement should be set aside for small businesses."[5] The court held another hearing the following day, February 23, 2021, and permitted FEMA to immediately begin the additional market research that it planned to conduct during the proposed remand proceedings. On February 24, 2021, the defendant filed a status report which reflected that six offerors had responded to the additional market research and "[t]he responses indicate that all six companies are small businesses and have the capabilities to perform the services required in the Solicitation." The court held another hearing on February 25, 2021,[6] and instructed the parties to file simultaneous cross-motions for judgment on the Administrative Record on February 26, 2021, and simultaneous reply briefs on March 1, 2021.

Ranger American of Puerto Rico filed a motion for judgment on the Administrative Record, as well as a motion for preliminary and permanent injunction, in which it argued that "[c]ontrary to statute and regulation, FEMA has restricted competition by designating the procurement as a 100 percent small business set-aside." Protestor further contended that "FEMA has improperly set aside the procurement without conducting the required fair proportion analysis." Additionally, protestor argued that "FEMA has violated the 'Rule of Two.' See FAR 19.502-2(b). No reasonable basis exists for FEMA to have expected it would receive offers from at least two responsible small business concerns capable of successfully meeting the agency's needs at a fair market price."

Defendant responded that "Ranger's 'fair proportion' challenge lacks merit," and also argued that the "contracting officer properly set aside the 2021 Solicitation based on her reasonable determination that the Rule of Two had been satisfied." Similarly, AGMA contended that "[t]here is no 'required fair proportion analysis.'" Regarding the Rule of

---

[5] Given the reported urgency to have continued services in place in Puerto Rico, as identified by the government in all three bid protests before the undersigned, the court set a very aggressive schedule to resolve the above captioned protest.

[6] At the February 25, 2021 hearing, the defendant indicated that another offeror, [redacted], had responded to the additional market research.

Two, AGMA argued "[t]he Contracting Officer did not abuse her discretion here when she held a 'reasonable expectation that-(1) Offers will be obtained from at least two responsible small business concerns; and (2) Award will be made at fair market prices.'" (emphasis removed).[7]

On March 2, 2021, the court held oral argument on the cross-motions for judgment on the Administrative Record. After reviewing the parties' submissions and considering the parties' arguments at the oral argument, in response to the agency's request that a decision be made as soon as possible, the court issued an oral decision to the parties, and an explanation of its decision. The court's oral decision denied protestor's motion for

---

[7] Included in AGMA's motion for judgment on the Administrative Record was a motion to dismiss protestor's complaint for failing "to satisfy the pleading requirements." Protestor Ranger American of Puerto Rico responded that AGMA's motion raised the issue in a "conclusory manner" and is "devoid of analysis." At the oral argument, defendant's counsel explained that the government "did not file a motion to dismiss because we do believe there is sufficient facts in the complaint to establish and state a claim -- to state a claim in the case." The court notes that the bid protest complaint alleged, in part:

> Ranger has been performing guard service contracts in Puerto Rico for over 30 years. Ranger is familiar with the capabilities of guard service firms in Puerto Rico. The RFP includes complex requirements for management plans, which requires recruitment and vetting of a significant number of qualified personnel. The period from posting of the RFP to the proposal due date (less than three business days) increases the likelihood that no responsible small businesses will submit proposals (other than AGMA, which had advance notice through its prior Court protest actions). Even if small businesses meet the proposal deadline, there is an increased likelihood the small businesses will be unable to meet FEMA's needs at a fair market price. FEMA erred in determining it has a reasonable expectation that it will receive offers from small business concerns capable of fully performing the scope of work with technically acceptable proposals and at fair market prices. Small business concerns attempting to comply with the RFP requirements will lack adequate funding to pay their employees and meet all equipment and uniform contractual requirements. Small business concerns will also lack a formal corporate structure sufficient to maintain the complexity required by the contract. Given Ranger's industry knowledge, FEMA had strong evidence that small business contractors lack capability and responsibility to meet the RFP requirements at a fair market price, especially given the short notice and proposal period. As a result, FEMA must not have conducted any reasonable market research in light of the actual RFP requirements and timing. Any reasonable market research would have concluded that there is a substantial likelihood that FEMA will not receive two offers from capable entities at fair market prices.

The court agrees with protestor Ranger American of Puerto Rico and defendant that the complaint filed by Ranger American of Puerto Rico was sufficient to state a claim.

judgment on the Administrative Record and request for injunctive relief and granted defendant and intervenor's motions for motion for judgment on the Administrative Record. This Opinion incorporated and memorialized the oral decision.

### DISCUSSION

Rule 52.1(c)(1) (2020) of the Rules of the United States Court of Federal Claims (RCFC) governs motions for judgment on the administrative record. The court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006); see also Superior Optical Labs, Inc. v. United States, 150 Fed. Cl. 681, 691 (2020) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005)); AAR Manufacturing, Inc. v. United States, 149 Fed. Cl. 514, 522 (2020); Glocoms, Inc. v. United States, 149 Fed. Cl. 725, 731 (2020); Centerra Grp., LLC v. United States, 138 Fed. Cl. 407, 412 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1356-57); Informatics Applications Grp., Inc. v. United States, 132 Fed. Cl. 519, 524 (2017) (citation omitted); Strategic Bus. Sols., Inc. v. United States, 129 Fed. Cl. 621, 627 (2016), aff'd, 711 F. App'x 651 (Fed. Cir. 2018); Pursuant to RCFC 52.1, in a bid protest, the court reviews the agency's procurement decision to determine whether it is supported by the administrative record. See CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. 462, 481 (2013); see also CR/ZWS LLC v. United States, 138 Fed. Cl. 212, 223 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1353-54).

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330-32 (Fed. Cir. 2001); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380 (Fed. Cir. 2012) (explaining that the Tucker Act expressly waives sovereign immunity for claims against the United States in bid protests). The statute provides that protests of agency procurement decisions are to be reviewed under APA standards, making applicable the standards outlined in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and the line of cases following that decision. See, e.g., Per Aarsleff A/S v. United States, 829 F.3d 1303, 1309 (Fed. Cir. 2016) ("Protests of agency procurement decisions are reviewed under the standards set forth in the Administrative Procedure Act ('APA'), see 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706), 'by which an agency's decision is to be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)) (citing PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010))); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1242 (Fed. Cir. 2010) ("Following passage of the APA in 1946, the District of Columbia Circuit in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."); Galen Med. Assocs., Inc.

v. United States, 369 F.3d 1324, 1329 (Fed. Cir.) (citing Scanwell Labs., Inc. v. Shaffer, 424 F.2d at 864, 868, for its "reasoning that suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"), reh'g denied (Fed. Cir. 2004). In Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345 (Fed. Cir. 2004), the Federal Circuit explained that "[u]nder the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Id. at 1351 (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332)); see also Palantir USG, Inc. v. United States, 904 F.3d 980, 990 (Fed. Cir. 2018); AgustaWestland North Am., Inc. v. United States, 880 F.3d 1326, 1332 (Fed. Cir. 2018); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319.

When discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, see Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n.5, but focused its attention primarily on subsection (2)(A). See Croman Corp. v. United States, 724 F.3d 1357, 1363 (Fed. Cir.) ("'[T]he proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2006)]: a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (alterations in original) (quoting Banknote Corp. of Am. v. United States, 365 F.3d at 1350-51 (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir.), reh'g denied (Fed. Cir. 2000)))), reh'g and reh'g en banc denied (Fed. Cir. 2013). The statute says that agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D) (2018);[8] see also Veterans

---

[8] The language of 5 U.S.C. § 706 provides in full:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;

Contracting Grp., Inc. v. United States, 920 F.3d 801, 806 (Fed. Cir. 2019) ("In a bid protest, we follow Administrative Procedure Act § 706 and set aside agency action 'if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1252 (Fed. Cir. 2015); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d 1353, 1358 (Fed. Cir. 2015); Orion Tech., Inc. v. United States, 704 F.3d 1344, 1347 (Fed. Cir. 2013); COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1381 (Fed. Cir. 2012) ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A); and Bannum, Inc. v. United States, 404 F.3d at 1351)); Savantage Fin. Servs. Inc., v. United States, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009); Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381 (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332); Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("'[T]he inquiry is whether the [government]'s procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (quoting Bannum, Inc. v. United States, 404 F.3d at 1351 (quoting 5 U.S.C. § 706(2)(A) (2000)))); NVT Techs., Inc. v. United States, 370 F.3d at 1159 ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000)." (internal citations omitted)); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); Synergy Sols., Inc. v. United States, 133 Fed. Cl. 716, 734 (2017) (citing Banknote Corp. of Am. v. United States, 365 F.3d at 1350); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Turner Constr. Co. v. United States, 645 F.3d 1377, 1383 (Fed. Cir.) (quoting PAI Corp. v. United States, 614 F.3d at 1351), reh'g en banc denied (Fed. Cir. 2011); see also Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358 ("In applying this [arbitrary and capricious] standard to bid

---

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

22

protests, our task is to determine whether the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of a regulation or procedure." (citing Savantage Fin. Servs., Inc. v. United States, 595 F.3d at 1285-86)); Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2013); McVey Co., Inc. v. United States, 111 Fed. Cl. 387, 402 (2013) ("The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law."); PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 531-32 ("Stated another way, a plaintiff must show that the agency's decision either lacked a rational basis or was contrary to law." (citing Weeks Marine, Inc. v. United States, 575 F.3d at 1358)), subsequent determination, 96 Fed. Cl. 119 (2010).

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 552 (2009); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358; Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009), reh'g and reh'g en banc denied (Fed. Cir. 2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("[T]he agency tribunal must present a full and reasoned explanation of its decision. . . . The reviewing court is thus enabled to perform meaningful review . . . ."); Textron, Inc. v. United States, 74 Fed. Cl. 277, 285-86 (2006), appeal dismissed sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 223 F. App'x 974 (Fed. Cir. 2007). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990).

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); see also Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 990 (Fed. Cir. 2018); Turner Constr. Co., Inc. v. United States, 645 F.3d at 1383; R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (citing Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir.), cert. denied, 516 U.S. 916 (1995)); Synergy Sols., Inc. v. United States, 133 Fed. Cl. at 735 (citing Impresa

Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33). """If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."""" Weeks Marine, Inc. v. United States, 575 F.3d at 1371 (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))); Limco Airepair, Inc. v. United States, 130 Fed. Cl. 544, 550 (2017) (citation omitted); Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 631 (2014); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. 342, 349 (2013); Norsat Int'l [America], Inc. v. United States, 111 Fed. Cl. 483, 493 (2013); HP Enter. Servs., LLC v. United States, 104 Fed. Cl. 230, 238 (2012); Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 780 (2011).

Stated otherwise by the United States Supreme Court:

Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (internal citations omitted), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law" standard, the Federal Circuit stated: "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); In re Sang Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959 (Fed. Cir. 1993); ); Sys. Studies & Simulation, Inc. v. United States, 146 Fed. Cl. 186, 199 (2019); By Light Prof'l IT Servs., Inc. v. United States, 131 Fed. Cl. 358, 366 (2017); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" (internal citations omitted) (quoting Keeton Corrs., Inc. v. United States, 59 Fed. Cl. 753, 755, recons. denied, 60 Fed. Cl. 251 (2004); and Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381)), appeal dismissed, 559 F. App'x 1033 (Fed. Cir. 2014); Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 382; Alamo Travel Grp.,

LP v. United States, 108 Fed. Cl. 224, 231 (2012); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 63 (2001), aff'd, 30 F. App'x 995 (Fed. Cir. 2002).

According to the United States Court of Appeals for the Federal Circuit:

Effective contracting demands broad discretion. Burroughs Corp. v. United States, 223 Ct. Cl. 53, 617 F.2d 590, 598 (1980); Sperry Flight Sys. Div. v. United States, 548 F.2d 915, 921, 212 Ct. Cl. 329 (1977); see NKF Eng'g, Inc. v. United States, 805 F.2d 372, 377 (Fed. Cir. 1986); Tidewater Management Servs., Inc. v. United States, 573 F.2d 65, 73, 216 Ct. Cl. 69 (1978); RADVA Corp. v. United States, 17 Cl. Ct. 812, 819 (1989), aff'd, 914 F.2d 271 (Fed. Cir. 1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." Tidewater Management Servs., 573 F.2d at 73, 216 Ct. Cl. 69.

Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958-59; see also Res-Care, Inc. v. United States, 735 F.3d 1384, 1390 (Fed. Cir.) ("DOL [Department of Labor], as a federal procurement entity, has 'broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation.'" (quoting Tyler Constr. Grp. v. United States, 570 F.3d 1329, 1334 (Fed. Cir. 2009))), reh'g en banc denied (Fed. Cir. 2014); Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 995 (Fed. Cir. 1996); Geo-Med, LLC v. United States, 126 Fed. Cl. 440, 449 (2016); Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations."); Furthermore, according to the United States Court of Appeals for the Federal Circuit:

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Accordingly, procurement decisions are subject to a "highly deferential rational basis review." CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotation marks omitted).

PAI Corp. v. United States, 614 F.3d at 1351; see also AgustaWestland N. Am., Inc. v. United States, 880 F.3d at 1332 ("Where, as here, a bid protester challenges the procurement official's decision as lacking a rational basis, we must determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,' recognizing that 'contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33 (internal quotation marks and citation omitted))); Weeks Marine, Inc. v. United States, 575 F.3d at 1368-69 ("We have stated that procurement decisions 'invoke [ ] "highly deferential" rational basis review.' Under that standard, we sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" (alteration in original) (quoting CHE

Consulting, Inc. v. United States, 552 F.3d at 1354 (quoting Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058))).

"Contracting officers 'are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process,'" PAI Corp. v. United States, 614 F.3d at 1351 (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332), and "[a]ccordingly, procurement decisions are subject to a 'highly deferential rational basis review.'" Id. (quoting CHE Consulting, Inc. v. United States, 552 F.3d at 1354 (Fed. Cir. 2008) (internal quotation marks omitted). As recently explained by a Judge of the United States Court of Federal Claims, "'[i]dentical review standards apply under the APA in the context of a sole-source award.'" Utech Prod. v. United States, 148 Fed. Cl. 542, 549 (2020) (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)).

When the contracting officer's discretion grows, so does the burden on the protestor. As noted in D & S Consultants, Inc. v. United States:

> The protestor's burden becomes more difficult the greater the degree of discretion vested in the contracting officer. DynCorp Int'l v. United States, 76 Fed. Cl. 528, 537 (2007). Negotiated procurements afford the contracting officer a "breadth of discretion;" "best-value" awards afford the contracting officer additional discretion. Id. Therefore, in a negotiated, best-value procurement, the "protestor's burden is especially heavy." Id.

D & S Consultants, Inc. v. United States, 101 Fed. Cl. 23, 33 (2011), aff'd, 484 F. App'x 558 (Fed. Cir. 2012); see also Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1330 (noting that contracting officers have great discretion in negotiated procurements but even greater discretion in best-value determinations than in procurements based on cost alone); PHT Supply Corp. v. United States, 71 Fed. Cl. 1, 11 (2006) ("It is critical to note that 'a protestor's burden is particularly great in negotiated procurements because the contracting officer is entrusted with a relatively high degree of discretion, and greater still, where, as here, the procurement is a "best-value" procurement.'" (citations omitted)). "It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." Banknote Corp. of Am. Inc. v. United States, 365 F.3d at 1355 (citing TRW, Inc. v. Unisys Corp., 98 F.3d at 1327-28; E.W. Bliss Co. v. United States, 77 F.3d at 449; Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958–59); see also Am. Tel. & Tel. Co. v. United States, 307 Fed. at 1379; Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958; Brooks Range Contract Servs., Inc. v. United States, 101 Fed. Cl. 699, 707 (2011) ("[A] plaintiff's burden 'is elevated where the solicitation contemplates award on a "best value" basis.'" (internal citations omitted)); Matt Martin Real Estate Mgmt. LLC v. United States, 96 Fed. Cl. 106, 113 (2010); Serco v. United States, 81 Fed. Cl. 463, 496 (2008) ("To be sure, as noted at the outset, plaintiffs have a significant burden of showing error in that regard because a court must accord considerable deference to an agency's best-value decision in trading off price with other factors.").

A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. See Tinton Fall Lodging Realty, LLC v. United Sates, 800 F.3d at 1364; see also Grumman Data Sys. Corp. v. Dalton, 88 F.3d at 995-96; Enhanced Veterans Sols., Inc. v. United States, 131 Fed. Cl. 565, 578 (2017); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. at 349; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. at 340. The Federal Circuit has indicated that "[t]his court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts'; a mere inference or suspicion . . . is not enough." PAI Corp. v. United States, 614 F.3d at 1352 (citing John C. Grimberg Co. v. United States, 185 F.3d 1297, 1300 (Fed. Cir. 1999)); see also Turner Constr. Co., Inc. v. United States, 645 F.3d at 1387; Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 759 (2012); Filtration Dev. Co., LLC v. United States, 60 Fed. Cl. 371, 380 (2004).

> A bid protest proceeds in two steps. First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

Bannum, Inc. v. United States, 404 F.3d at 1351; T Square Logistics Servs. Corp. v. United States, 134 Fed. Cl. 550, 555 (2017); FirstLine Transp. Sec., Inc. v. United States, 119 Fed. Cl. 116, 126 (2014), appeal dismissed (Fed. Cir. 2015); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Archura LLC v. United States, 112 Fed. Cl. at 496. To prevail in a bid protest case, the protestor not only must show that the government's actions were arbitrary, capricious, or otherwise not in accordance with the law, but the protestor also must show that it was prejudiced by the government's actions. See 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 907 ("In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."); IT Enter. Sols. JV, LLC v. United States, 132 Fed. Cl. 158, 173 (2017) (citing Bannum v. United States, 404 F.3d at 1357-58).

As explained by the United States Court of Federal Claims in Digitalis Education Solutions, Inc. v. United States:

> Only an "interested party" has standing to challenge a contract award. Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. Id. Thus, a party must show that it is 1) an actual or prospective bidder and 2) that it has a direct economic interest. "[I]n order to be eligible to protest, one who has

not actually submitted an offer must be expecting to submit an offer prior to the closing date of the solicitation." <u>MCI Telecomms. Corp. v. United States</u>, 878 F.2d 362, 365 (Fed. Cir. 1989). To prove a direct economic interest, a party must show that it had a "substantial chance" of winning the contract. <u>Rex Serv.</u>, 448 F.3d at 1308.

<u>Digitalis Educ. Solutions, Inc. v. United States</u>, 664 F.3d 1380, 1384 (Fed. Cir. 2012); <u>see also</u> <u>Am. Fed'n of Gov't Emps. v. United States</u>, 258 F.3d 1294, 1302 (Fed. Cir. 2001), <u>cert.</u> <u>denied</u>, 534 U.S. 113 (2002); <u>Centech Grp., Inc. v. United States</u>, 78 Fed. Cl. 496, 503-504 (2007).

In the context of a pre-award bid protest which challenges the terms of the solicitation, the United States Court of Appeals for the Federal Circuit has determined that to show the requisite "direct economic interest," and, therefore, to be an "interested party" under the Tucker Act, the protestor has to have suffered a "'non-trivial competitive injury which can be redressed by judicial relief.'" <u>See</u> <u>Orion Tech., Inc. v. United States</u>, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1362–63); <u>see</u> <u>also</u> <u>CGI Fed. Inc. v. United States</u>, 779 F.3d 1346, 1348 (Fed. Cir. 2018); <u>COMINT Sys. Corp. v. United States</u>, 700 F.3d at 1383 n.7 ("[I]n <u>Weeks Marine</u> this court specifically held that the 'non-trivial competitive injury' standard was applicable to 'a <em>pre-award</em> protest.'" (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1362)) (emphasis in original); <u>MVS USA, Inc. v. United States</u>, 111 Fed. Cl. 639, 647 (2013). This is a lower standard than the "substantial chance" standard used in post-award bid protests, but still requires a "showing of <em>some</em> prejudice." <u>Orion Tech., Inc. v. United States</u>, 704 F.3d at 1348-49 (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1362) (emphasis in original).

As indicated above, Ranger American of Puerto Rico argues that "FEMA failed to conduct a reasonable fair proportion determination," and contends that "[b]efore setting aside a procurement exclusively for small business concerns under the Rule of Two, FAR 19.502-1(a) requires an agency to first assess whether the agency has 'assur[ed] that a fair proportion of Government contracts in each industry category is placed with small business concerns." (brackets in original). Defendant responds that "Ranger's 'fair proportion' challenge lacks merit." AGMA goes farther and states that "[t]here is no 'required fair proportion analysis.'"

Section 644 of Title 15, titled "Awards or contracts," states, in part:

(a) Small business procurements
(1) In general
For purposes of this chapter, small business concerns shall receive any award or contract if such award or contract is, in the determination of the Administrator and the contracting agency, in the interest of--
(A) maintaining or mobilizing the full productive capacity of the United States;
(B) war or national defense programs; or

(C) assuring that a fair proportion of the total purchases and contracts for goods and services of the Government in each industry category (as defined under paragraph (2)) are awarded to small business concerns.

15 U.S.C. § 644(a) (2018) (emphasis added); see also Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 42 (2014); Dynamic Educ. Sys., Inc. v. United States, 109 Fed. Cl. 306, 324–25 (2013). FAR 19.502-1, "Requirements for setting aside acquisitions," states

> (a) The contracting officer shall set aside an individual acquisition or class of acquisitions for competition among small businesses when—
> (1) It is determined to be in the interest of maintaining or mobilizing the Nation's full productive capacity, war or national defense programs; or
> (2) Assuring that a fair proportion of Government contracts in each industry is placed with small business concerns; and the circumstances described in 19.502–2 or 19.502–3(a) exist.
> (b) The requirement in paragraph (a) of this section does not apply to purchases at or below the micro-purchase threshold, or purchases from required sources under part 8 (e.g., Committee for Purchase From People Who are Blind or Severely Disabled).

48 C.F.R. § 19.502-1 (2020) (capitalization in original). Protestor asserts, according to

> FAR 19.502-1(a), FEMA was required to have determined that a "fair proportion" of the relevant industry category for the services at issue here was placed with small business concerns. The 2019 procurement that resulted in award to Ranger was unrestricted. No change in the industry or competition has been produced to show any change. FEMA's current solicitation is the result of disparate treatment contrary to CICA [Competition in Contract Act of 1984], the FAR, and APA.

(capitalization in original). Protestor argues "FEMA never conducted the fair proportion analysis as required by FAR 19.502-1(a). FEMA's actions were arbitrary and capricious because the agency entirely failed to consider an important aspect of the problem." Specifically, Ranger American of Puerto Rico contends that "FEMA entirely failed to consider whether a fair proportion of contracts was already set-aside for small businesses such that the CICA exception to full and open competition did not apply."

Ranger American of Puerto Rico, citing Adams & Associates, Inc. v. United States, 741 F.3d 102, acknowledges that "[t]he Federal Circuit has clarified that an agency need only meet minimum requirements to satisfy FAR 19.502-1,"[9] but still tries to argue that FEMA did not meet those minimum requirements. The United States Court of Appeals for the Federal Circuit in Adams & Associates considered two related bid protests for small business set-asides. The United States Department of Labor had awarded contracts to

---

[9] In its reply brief, protestor further admits that the "United Stated Court of Appeals for the Federal Circuit has set a relatively low bar for agency fair proportion determinations."

Adams & Associates for the operation of the Gadsden Job Corps Center and for the operation of the Shriver Job Corps Centers. See Adams & Assocs., Inc. v. United States, 741 F.3d 102, 104 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2014). After the end of both contracts, the Department of Labor issued a solicitation notices for the Gadsden contract and the Shriver contract as total small business set-asides, which Adams & Associates challenged in pre-award bid protests as Adams & Associates was not eligible as a small business. Adams & Associates argued that the Department of Labor did not correctly apply the fair proportion regulation, and also argued that the Department did not properly conduct a Rule of Two analysis.[10] Id. at 109.

For its fair proportion argument, Adams & Associates contended that FAR 19.502-1 requires "'a [contracting officer] shall set aside an individual acquisition when, and only when, (1) "it is determined . . . to be in the interest of assuring a fair proportion of Government contracts in each industry category is placed with small business concerns;" and (2) "the circumstances described in 19.502–2 [i.e., the Rule of Two] . . . exist."'" Adams & Assocs., Inc. v. United States, 741 F.3d at 109-110 (emphasis and alterations in original). The Federal Circuit, however, explained:

> Adams's interpretation of the Federal Acquisition Regulation also finds no support in the Small Business Act, from which the "fair proportion" language originated:
>
>> To effectuate the purposes of this chapter, small-business concerns within the meaning of this chapter shall receive any award or contract or any part thereof . . . as to which it is determined by the Administration and the contracting procurement or disposal agency . . . to be in the interest of assuring that a *fair proportion* of the total purchases and contracts for property and services for the Government in each industry category are placed with small business concerns. . . . These determinations may be made for individual awards or contracts or for classes of awards or contracts.
>
> 15 U.S.C. § 644(a) (emphasis added). The "fair proportion" determination is to be made "by the Administration and the contracting procurement *or* disposal agency" and "may be made for individual awards *or* contracts *or* for classes of awards or contracts." *Id.* (emphases added). The plain language of the statute repudiates Adams's suggestion that the "fair proportion" determination is part of a two-part process executed by a contracting officer. There is no indication in the Small Business Act that the "fair proportion" determination must be made on a contract-specific basis.

---

[10] The protestor in Adams & Associates also challenged the decision to use a small business set-aside as violating the Workforce Investment Act, which is not at issue in the above captioned protest. See Adams & Assocs. v. United States, 741 F.3d at 107-108.

Here, the DOL conducted market research to assess the interest among small businesses in bidding on the contracts, applied the appropriate NAICS size standard, and received the endorsement of the Office of Small and Disadvantaged Business Utilization as part of its "fair proportion" determination. The Court of Federal Claims correctly concluded that the DOL had satisfied the "fair proportion" determination.

Adams & Assocs., Inc. v. United States, 741 F.3d at 110 (emphasis in original). The Federal Circuit concluded:

Notably, Adams has not articulated a means by which an individual contracting officer would make a "fair proportion" determination in the context of a specific procurement. While Adams is correct that the DOL must make a "fair proportion" determination prior to designating a contract as a small business set-aside, the method it proposes for doing so is without support. The DOL properly employed a method that comports with the Small Business Act; therefore, its decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and must be sustained. 5 U.S.C. § 706(2)(A).

Adams & Assocs., Inc. v. United States, 741 F.3d at 110.

Most significantly for the protest currently under review, the Federal Circuit determined that "[t]here is no indication in the Small Business Act that the 'fair proportion' determination must be made on a contract-specific basis." Id. Although decided a year before the Federal Circuit's decision in Adams & Associates, a Judge of the United States Court of Federal Claims came to a similar conclusion in Dynamic Educational Systems, Inc. v. United States, 109 Fed. Cl. 306, albeit focusing on 15 U.S.C. § 644. In Dynamic, similar to the facts in Adams & Associates, an incumbent contractor at a Jobs Corps Center, this one at the Montgomery, Alabama Job Corps Center, filed a pre-award protest challenging the Department of Labor's decision to proceed with the subsequent requirement as a small business set-aside. See Dynamic Educ. Sys., Inc. v. United States, 109 Fed. Cl. at 309–10. The Dynamic protestor argued that

before a procurement may be set aside for small businesses, the procuring agency, in this case DOL acting through Ms. Andry, had to make a preliminary determination pursuant to 15 U.S.C. § 644(a) (2006) ("Section 644"), that a "fair proportion" of work in that industry category should be set aside for small businesses. Plaintiff contends that the set-aside is fatally flawed because that determination was not made.

Dynamic Educ. Sys., Inc. v. United States, 109 Fed. Cl. at, 319. The Judge in Dynamic provided a thorough analysis of 15 U.S.C. § 644 to conclude that the Department of Labor's set-aside was not fatally flawed. The Judge explained:

Section 644 itself sets up a larger scheme of promoting small-business contracting that seems incompatible with a prior, rigid, contract-by-contract

31

determination by contracting officers of whether a "fair proportion" has been achieved. Subsection (g) of Section 644, for example, calls for the President to set government-wide goals, in percentage terms for small business participation in contracting:

> [t]he President shall annually establish Government-wide goals for procurement contracts awarded to small business concerns. . . . Notwithstanding the Government-wide goal, each agency shall have an annual goal that presents, for that agency, the maximum practicable opportunity for small business concerns.

15 U.S.C. § 644(g). The agency-wide goal will be set by the "head of each Federal agency, after consultation with the Administration." *Id.* § 644(g)(2)(A). The purpose of these goals is to "make consistent efforts to annually expand participation by small business concerns from each industry category in procurement contracts of the agency." *Id.* § 644(g)(2)(D). An enforcement mechanism of sorts exists in subsection (h), which calls for annual reports to Congress and the President as to the agencies' level of success in meeting goals for small business contracting. *Id.* § 644(h).

Also integral to the operation of Section 644 is the appointment within each agency of a Director of the Office of Small and Disadvantaged Business Utilization. The OSDBU monitors performance in meeting goals and encourages "unbundling" contracts to make them more accessible to small businesses. In addition, one of the roles of the Director of OSDBU is to

> make recommendations to contracting officers as to whether a particular contract requirement should be awarded pursuant to subsection (a) of this section, or section 637(a) of this title or section 2323 of Title 10. Such recommendations shall be made with due regard to the requirements of subsection (m) of this section, and the failure of the contracting officer to accept any such recommendations shall be documented and included within the appropriate contract file.

*Id.* § 644(k)(10).

The "fair proportion" determination is also inextricably linked to the process by which the Office of Management and Budget creates NAICS industry codes and the Small Business Administration then assigns size standards for each NAICS code. When the contracting officer selects "the appropriate NAICS code and related small business size standard and [includes it] in solicitations," 48 C.F.R. § 19.303(a), the effect is to incorporate a judgment made by the Small Business Administration as to what the appropriate

small-business size standard is for a particular industry category. This standard can be adjusted, with the result that more or less companies are able to compete as small businesses.

Congress was obviously aware of this interplay between the fair proportion determination and the use of set-asides based on size standards. When Section 644 was amended in 1986 by the National Defense Authorization Act for Fiscal Year 1987, Pub. L. No. 99–661, § 921, 100 Stat. 3816, 3926–30 (1986), to add the requirement that the fair proportion determination be made on an industry category basis, the Report of the House Armed Services Committee noted the following:

> The Small Business Act requires that a fair proportion of the total purchases and contracts for property and services needed by the Federal Government be placed with small business concerns. One procedure for accomplishing this objective is the small business set-aside program.
>
> . . .
>
> The recommended provision allows the SBA flexibility to evaluate the existing size standards and craft size standards consistent with the objectives of the Act. The committee has been advised that, in some industries such as the military boot manufacturing industry, only manufacturers exist, all of whom are classified as small businesses. An inappropriate reduction in size could result in two or three companies being classified as small, leaving the one or two companies not deemed small at a significant disadvantage in bidding those contracts. In circumstances such as those, the size standard should be reduced to a sufficient degree that all potential offerors with similar capabilities are treated similarly.

H.R. Rep. No. 99–718, at 256, 259, H.R. Rep. No. 99–718, at 256, 259 (1986). This strongly suggests that, even if Section 644 was initially adopted on the assumption that some other device would emerge to implement the "fair proportion" determination, Congress understood that set-asides were being used to accomplish that end. By then, of course, the Rule of Two was already in place. *See* 49 Fed. Reg. 40135–01 (Oct. 12, 1984).

<u>Dynamic Educ. Sys., Inc. v. United States</u>, 109 Fed. Cl. at 324–25. Similar to Federal Circuit's conclusion in <u>Adams & Associates</u>, the Judge in <u>Dynamic</u> determined that the agency had not acted improperly, as follows:

> In sum, we agree with defendant that the fair proportion determination was satisfied when the Contracting Officer applied the appropriate NAICS size

standard, received the endorsement of the OSDBU, and then invoked the Rule of Two. The mechanisms contemplated by Section 644—goal setting by the executive branch and input from the OSDBU—and the industry specific application of size standards by OMB and the SBA, all were implemented. We conclude that nothing more was required to satisfy the "fair proportion" requirement.

Although not necessary to the outcome, we also note that plaintiff was never able to articulate a clear means by which a single contracting officer could make a fair proportion determination in the context of a particular procurement. Of necessity, this would seem to call for a much broader vantage point, perhaps even outside the agency. Moreover, plaintiff was unable to offer any reasonable likelihood that a remand for a "fair proportion" determination would lead to a different outcome. Arguing that a new determination "might" come out differently would not satisfy the requirement of a non-trivial competitive injury. Nor could plaintiff offer any meaningful guidelines for the court to apply in determining whether the agency's discretion had been abused.

Dynamic Educ. Sys., Inc. v. United States, 109 Fed. Cl. at 325 (footnote omitted).

Like the protestors in Adams & Associates and Dynamic, Ranger American of Puerto Rico does not clearly articulate how the FEMA contracting officer could make a fair proportion determination in the context of the one procurement at issue. Most significantly, however, as noted above, the Federal Circuit in Adams & Associates determined that there "is no indication in the Small Business Act that the 'fair proportion' determination must be made on a contract-specific basis." Adams & Assocs., Inc. v. United States, 741 F.3d at 110.

As noted above, Ranger American of Puerto Rico contends that "FEMA's actions also reflect disparate treatment," arguing that "[t]o make its prior awards to Ranger, FEMA must have found that a set-aside was not proper since the agency already awarded a fair proportion of relevant contracts to small businesses." Relatedly, Ranger American of Puerto Rico argues that "FEMA's decision is also disparate, arbitrary, and contrary to CICA and the FAR because the agency is reversing course from previous procurements for the same services in the same location that were open to all offerors, including large businesses, including the recent award by FEMA in June 2020 to Ranger."

Protestor's arguments, however, are speculative about the agency's needs in both 2019 and in 2021, and presumes that FEMA needs have not changed since 2019. The Administrative Record, moreover, demonstrates the nature for the requirement has changed according to the agency between 2019 and 2021 as the Market Research Report for the Solicitation explained that "[t]he previous requirement was for 600+ armed guards. Due to the closure of multiple facilities, the current requirement is significantly smaller, requiring fewer than 200 armed guards." Additionally, defendant states in its reply brief that "[r]egardless of a previous proportion, or the current proportion, of small

business contracts with the agency, more small business participation is encouraged." Indeed, the Rule of Two, discussed below, is one such example of a statutory provision to encourage small businesses. See Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 43 (2014) (referencing the "overall statutory goal of promoting small businesses, which is advanced by applying the 'Rule of Two'"). Additionally, a number of the provisions in the FAR addresses the importance of the small business set-aide. For example, FAR § 19.201(a) states that, "[i]t is the policy of the Government to provide maximum practicable opportunities in its acquisitions to small business" and FAR § 19.203(e) provides that, "[s]mall business set-asides have priority over acquisitions using full and open competition." Moreover, FAR § 19.501(a) states that, "[t]he purpose of small business set-asides is to award certain acquisitions exclusively to small business concerns. A 'set-aside for small business' is the limiting of an acquisition exclusively for participation by small business concerns. A small business set-aside may be open to any of the small business concerns identified at [FAR §] 19.000(a)(3)." FAR § 19.501(a).

Regarding protestor's argument that the FEMA's decision for the Solicitation was contrary to CICA, as noted by an Judge of the United States Court of Federal Claims, "CICA expressly allows the government to favor small businesses to further the policies of the Small Business Act, 15 U.S.C. §§ 638, 644. 10 U.S.C. § 2304(b)(2)." InGenesis, Inc. v. United States, 104 Fed. Cl. 43, 52 (2012). Moreover, even an agency has already set-aside a fair proportion of the agency's contracts, the FAR at section 19.502-5 makes clear that that alone is not a valid reason to determine a specific small business set-aside is improper. See FAR. § 19.502-5 (2020). FAR § 19.502-5, titled: "Insufficient reasons for not setting aside an acquisition," states in full:

> None of the following is, in itself, sufficient cause for not setting aside an acquisition:
>
> (a) A large percentage of previous contracts for the required item(s) has been placed with small business concerns.
>
> (b) The item is on an established planning list under the Industrial Readiness Planning Program. However, a total small business set-aside shall not be made when the list contains a large business Planned Emergency Producer of the item(s) who has conveyed a desire to supply some or all of the required items.
>
> (c) The item is on a Qualified Products List. However, a total small business set-aside shall not be made if the list contains the products of large business unless none of the large businesses desires to participate in the acquisition.
>
> (d) A period of less than 30 days is available for receipt of offers.
>
> (e) The acquisition is classified.

(f) Small business concerns are already receiving a fair proportion of the agency's contracts for supplies and services.

(g) A class small business set-aside of the item or service has been made by another contracting activity.

(h) A "brand name or equal" product description will be used in the solicitation.

FAR. § 19.502-5 (2020).

Despite the foregoing, Ranger American of Puerto Rico nevertheless tries to question the specific documentation by FEMA in making the set-aside determination in the current bid protest. Aside from citing to 15 U.S.C. § 644(a) and FAR 19.502-1, which, as discussed in Adams & Associates and Dynamic, does not provide a basis to successfully challenge a single procurement for an agency's fair proportion obligations, protestor does not cite to any statute or regulation to argue that FEMA failed to make a proper fair proportion determination. Instead in its submissions, Ranger American of Puerto Rico merely repeats that "there is no evidence that FEMA considered the fair proportion requirement set forth in FAR 19.502-1(a)(2) at all." (emphasis in original).

Despite repeatedly arguing that there no evidence that the agency considered the fair proportion requirement, Ranger American of Puerto Rico also argues that FEMA reliance on the January 26, 2021 Small Business Review Form, Form 700-22, to make a proper fair proportion determination was improper. The court notes that in Adams & Associates, the Federal Circuit determined that "the DOL conducted market research to assess the interest among small businesses in bidding on the contracts, applied the appropriate NAICS size standard, and received the endorsement of the Office of Small and Disadvantaged Business Utilization as part of its 'fair proportion' determination. The Court of Federal Claims correctly concluded that the DOL had satisfied the 'fair proportion' determination." Adams & Assocs., Inc. v. United States, 741 F.3d at 110 (citing Adams & Assocs., Inc. v. United States, 109 Fed. Cl. at 355).

Protestor Ranger American of Puerto Rico argues, "[h]ere, FEMA apparently relies on Form 700-22 to support its fair proportion determination. The Form is erroneous and misleading regarding whether the requirement is 'new,' is not signed or endorsed by the relevant office, and otherwise reflects disparate treatment." (internal reference omitted). Ranger American of Puerto Rico provides zero citations to caselaw or regulations that demonstrate the absence of a signature or endorsement on Form 700-22 means that FEMA has not complied with the requirement to set aside a fair proportion of the contracts.

Additionally, protestor Ranger American of Puerto Rico points out that "[t]he Form is signed by the Small Business Specialist, but he neglected to mark whether he concurred or disagreed with FEMA's decision to issue the RFP as a total set-aside for small business concerns." Defendant agrees that small business specialist did not specifically indicate his concurrence, but explains that "[i]f the SBS [small business specialist] had not concurred in the set-aside, the form required him to have attached a

justification for that non-concurrence." The court notes that the small business specialist did digitally sign Form 700-22. The Form 700-22 shows:



Defendant also argues "the contracting officer would have been required to respond to the SBS's non-concurrence," if the small business specialist had determined that the procurement was not properly a small business set-aside.

Protestor further contends that "[t]here is a space for the OSDBU [Office of Small and Disadvantaged Business Utilization] Director to sign (Box 22), but that is blank. Box 23 indicates that review by the OSBDU is required." The Form 700-22 at Boxes 22 and 23 appear as the following in the Administrative Record:

| (21) Completed for all unrestricted actions of $2,500,000 or more (including sole source procurements to other than small business). | | | |
|---|---|---|---|

SBA Procurement Center Representative (PCR)  ☐ Concurrence  ☐ Non-Concurrence

Signature of SBA PCR: _____  Date: _____

(22) Completed for all actions as designated by the OSDBU Director

OSDBU Director  ☐ Concurrence  ☐ Non-Concurrence

Signature of OSDBU Director: _____  Date: _____

**NOTES**

(23) Review and Required Signatures

| Types of Reviews<br>X - indicates review and signature unless noted otherwise. | OSDBU Director | CO | SBS | SBA PCR |
|---|---|---|---|---|
| Procurement actions, at or above the SAT, but not exceeding $2,500,000. | | | | |
| Unrestricted procurement actions at or above $2,500,000 (including sole source procurements at or above $2,500,000 to other than small business). This review will also include the Substantial Bundling Review, Section III, Item (17). | | | | |
| Only applicable for procurement actions designated by OSDBU Director. | X | X | X | |

(24) **Standard timeframes** for **completion of form** by review officials. The SBS shall complete the review process within two business days. The SBA PCR shall complete the review process, within two business days, after receipt from the SBS.

(25) **The completed DHS Form 700-22 shall be placed in the solicitation file.**

Although Box 22 in Form 700-22 is unsigned, the court notes that for Box 23, an "x" has been marked for the small business set-aside for each of three identified officials: Contracting Officer Carolyn Knight, the small business specialist, and the OSDBU Director. Form 700-22 explains that an "x" "indicates review and signature unless noted otherwise." Moreover, the court does not see any "requirement" in the Administrative Record that the signature is necessary or the failure to be signed means that the agency somehow demonstrates that FEMA has failed to meet its obligation to make a fair proportion determination. Nor is there a regulation that mandates a signature on Form 700-22 or its equivalents in order to meet the fair proportion requirement.[11] Defendant argues

---

[11] The court notes that 15 U.S.C. § 644(k), titled: "Office of Small and Disadvantaged Business Utilization; Director," "established in each Federal agency having procurement powers an office to be known as the 'Office of Small and Disadvantaged Business Utilization,'" and established that "[t]he management of each such office shall be vested in an officer or employee of such agency. . . ." 15 U.S.C. § 644(k) (capitalization in original). Subsection k, however, does not provide how the office should function or how involvement, including concurrence of Office of Small and Disadvantaged Business Utilization personnel, should be conducted.

38

the record does not contain any indication that this acquisition has been designated by the OSDBU Director as requiring this form to be signed by the Director. To the contrary, and consistent with the policy favoring small business contracting, the form shows that there are more signatures required when an acquisition is *not* set aside for small businesses than when an acquisition *is* set aside for small businesses.

(emphasis in original).

As noted above, protestor Ranger American of Puerto Rico further argues, "[e]ven if it [Form 700-22] had been signed or endorsed, that would have been unreasonable and not valid since the Form erroneously states the requirement is 'new.'" The requirement for services in Puerto Rico is similar to the requirements in the post-award bid protests of Case No. 20-926C, and Case No. 21-740C, described above. The 2019 RFP sought "contracted Protective Service Officers (PSO) and Patrolled Services to safeguard federal employees, visitors and property at both temporary and fixed facilities during disaster and emergency declarations for DR-4339 (all counties and municipalities within the Commonwealth of Puerto Rico)." The sole source bridge contract provided for "PSOs to provide physical security at all sites and facilities related to disaster declaration DR-4339-PR (for Hurricane Maria) encompassing all municipalities of the U.S. Territory of Puerto Rico." The Solicitation at issue in the protest currently under review sought contracted Protective Service Officers (PSO) and Patrolled Services to safeguard federal employees, visitors and property at both temporary and fixed facilities during disaster and emergency declarations for DR-4339 (all counties and municipalities within the Commonwealth of Puerto Rico)." (capitalization in original). Despite the similarities in the description of the type of work, the number of contract personnel is significantly different. The Small Business Review Form for the 2019 RFP noted that "[t]he Contractor shall be able to provide 600+ guards to cover locations in all municipalities of the U.S. Territory of Puerto Rico. The contractor must perform duties/tasks necessary to provide Protective Security Officers (PSOs) for physical security services throughout the entire island of Puerto Rico." Regarding the sole source bridge contract, the contracting officer, Carolyn Knight, also indicated in her declaration for the sole source bridge contract that like the previous procurement for the 2019 RFP, the sole source bridge contract continued to solicit for a requirement of "600+ armed guards."

For the competitive procurement that FEMA intends to solicit to replace the sole source bridge contract, i.e., the Solicitation currently under review, however, only is intended to have a requirement of fewer than 200 armed guards. Indeed, the Market Research Report for the current Solicitation states "[t]he previous requirement was for 600+ armed guards. Due to the closure of multiple facilities, the current requirement is significantly smaller, requiring fewer than 200 armed guards." Additionally, during the course of the three bid protests before the undersigned, the defendant represented to the court that fewer guards were needed because of the length of time that has passed since Hurricane Maria made landfall in Puerto Rico. Therefore, although the same type of work is contemplated by the requirement for the most recent Solicitation, the scope of the

Solicitation in terms of personnel numbers is numerically quite different than the previous ones. Defendant observes, "[i]t is unclear why Ranger believes that the requirement in the 2021 Solicitation is not 'new' when the record confirms that the requirement, though similar to that sought in previous solicitations, is different from previous requirements. Indeed, it is significantly smaller than previous requirements, and, therefore, can be considered a new requirement."[12] Defendant continues:

> it is also unclear why Ranger believes that an erroneous indication of "new" on the form would invalidate the form. Ranger appears to assert that identifying the requirement as "new" on the form misled the SBS into concurring in the set-aside decision. But there is no evidence that the SBS was misled or confused. To the contrary, the same SBS signed the Form 700-22 for the unrestricted 2019 Solicitation and therefore should have been at least generally familiar with the procurement history at issue.

(internal citation omitted). Although protestor Ranger American of Puerto Rico, as an incumbent contractor, questions the change in the most recent procurement to a set-aside contract, the agency's size requirement has changed. As a result none of the perceived shortcomings identified by protestor regarding Form 700-22 and its impact on the procurement demonstrate FEMA did not meet its obligations to make a fair proportion determination for the small business set-asides or did not describe a new set-aside procurement as represented.

In addition to arguing that FEMA did not make a proper fair proportion determination, Ranger American of Puerto Rico argues that "FEMA arbitrarily and unreasonably implemented the 'Rule of Two.'" Specifically, Ranger American of Puerto Rico contends that the agency "entirely failed to consider whether potential small business concerns are responsible or likely to offer fair market prices." Protestor also argues that "FEMA's [market research] report failed to consider required responsibility factors," and contends "FEMA's market research report and agency documents in the AR [Administrative Record] focus exclusively on whether there are small businesses in the relevant NAICS code, meaning the documents lack the required analysis of whether small business concerns are responsible or are capable of successfully performing at fair market prices for a five-year FEMA contract." (brackets added).

Regarding the small business set-aside determination, the FAR provides: "The purpose of small business set-asides is to award certain acquisitions exclusively to small business concerns." FAR § 19.501(a) (2020); see also Proxtronics Dosimetry, LLC v. United States, 128 Fed. Cl. 656, 680 (2016). FAR § 19.502-2(b) indicates that:

> The contracting officer shall set aside any acquisition over the simplified acquisition threshold for small business participation when there is a reasonable expectation that—

---

[12] Defendant also suggests that "[t]he agency intends to award a new contract based on the 2021 Solicitation—'new' in this context means 'new contract' not 'new need for these services.'"

(1) Offers will be obtained from at least two responsible small business concerns; and

(2) Award will be made at fair market prices. Total small business set-asides shall not be made unless such a reasonable expectation exists (see 19.502–3 for partial set-asides). Although past acquisition history and market research of an item or similar items are always important, these are not the only factors to be considered in determining whether a reasonable expectation exists. In making research and development small business set-asides, there must also be a reasonable expectation of obtaining from small businesses the best scientific and technological sources consistent with the demands of the proposed acquisition for the best mix of cost, performances, and schedules.

FAR § 19.502-2(b).

As generally explained by the United States Supreme Court in Kingdomware Technologies, Inc. v. United States:

In an effort to encourage small businesses, Congress has mandated that federal agencies restrict competition for some federal contracts. The Small Business Act thus requires many federal agencies, including the Department of Veterans Affairs, to set aside contracts to be awarded to small businesses. The Act requires each agency to set "an annual goal that presents, for that agency, the maximum practicable opportunity" for contracting with small businesses, including those "small business concerns owned and controlled by service-disabled veterans." 15 U.S.C. § 644(g)(1)(B). And federal regulations set forth procedures for most agencies to "set aside" contracts for small businesses. *See, e.g.,* 48 CFR § 19.502–2(b) (2015).

Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969, 1973 (2016).[13] A Judge of the United States Court of Federal Claims has explained that "[c]ontracting officers are required to 'review acquisitions to determine if they can be set aside for small business,' and must 'perform market research' before concluding that an acquisition should not be set aside for a small business." Proxtronics Dosimetry, LLC v. United States, 128 Fed. Cl. at 680 (citing FAR § 19.501(c)); see also FAR § 19.501(c) (2020). As further explained by another Judge of the United States Court of Federal Claims, "the decision to set aside a solicitation 'is a matter of business judgment within the contracting officer's discretion and, as such, must be upheld unless the Court finds the decision to be arbitrary,

---

[13] Ranger American of Puerto Rico states, without any support, in a footnote that "[t]he U.S. Supreme Court's decision in Kingdomware Technologies, Inc. v. United States, 136 S. Ct. 1969 (2016) is not relevant because the Court did not address the requirements of 15 U.S.C. § 644 or FAR 19.502-1 or -2. Rather, the Court addressed specific and different statutory language in 38 U.S.C. § 8127(d) (addressing certain preferences for veteran-owned business)."

capricious, an abuse of discretion or otherwise not in accordance with the law.'" <u>Mgmt. & Training Corp. v. United States</u>, 115 Fed. Cl. at 44 (quoting <u>Benchmade Knife Co. v. United States</u>, 79 Fed. Cl. 731, 738 (2007)); <u>see</u> <u>also</u> <u>Adams & Assocs. v. United States</u>, 741 F.3d at 111; <u>Res-Care Inc. v. United States</u>, 735 F.3d 1384, 1390 (Fed. Cir. 2013) (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1368–69 ("A contracting officer's decision to set aside a contract for small businesses invokes 'highly deferential rational basis review.'")), <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2014). Likewise, as noted by another Judge of this court, "[w]e begin with the reminder that, whether to set aside a solicitation for small businesses '"is a matter of business judgment within the contracting officer's discretion."'" <u>Adams & Assocs. v. United States</u>, 109 Fed. Cl. 340, 356 (2013) (quoting <u>Gear Wizzard, Inc. v. United States</u>, 99 Fed. Cl. 266, 282 (2011) (quoting <u>Benchmade Knife Co. v. United States</u>, 79 Fed. Cl. 731, 738 (2007))), <u>aff'd</u>, 741 F.3d 102 (Fed. Cir.), <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2014). "The 'law does not require any particular method.'" <u>Dynamic Educ. Sys., Inc. v. United States</u>, 109 Fed. Cl. at 326 (quoting <u>Gear Wizzard, Inc. v. United States</u>, 99 Fed. Cl. at 282). The determination for the Rule of Two is based on the information available to the contracting officer at the time the decision is made, in the protest currently under review, after the agency market research review, as "the FAR provides for set asides based on the contracting officer's 'reasonable expectation,' implicitly accepting the possibility that that expectation may ultimately prove incorrect." <u>Mgmt. & Training Corp. v. United States</u>, 118 Fed. Cl. 155, 169 (2013).

Although discussed above regarding protestor's fair proportion argument, the court also looks to the Federal Circuit's <u>Adams & Associates v. United States</u> decision regarding the requirements for a small business set-aside determination. As explained above, in <u>Adams & Associates</u>, the protestor had challenged the United States Department of Labor's decision to set aside two contracts, the Gadsden contract and the Shriver contract, as small business set-asides. <u>See</u> <u>Adams & Assocs. v. United States</u>, 741 F.3d at 105. The Federal Circuit explained regarding the requirements for a small business set-aside determination:

> Adams's reading of the Rule of Two ignores that "a reasonable expectation" that at least two responsible small businesses will submit bids at fair market prices is all that is required. Here, through the RFI process, the DOL performed market research about the level of interest from small businesses in bidding on the Shriver and Gadsden contracts. It then determined from the responses that there was a reasonable expectation that at least two responsible small businesses would make offers for the operation of each of the Centers. To Adams, "the issue here is that the market research . . . must generate the information necessary to address the expressly required responsibility and price reasonableness legal elements of the Rule of Two." According to Adams, the required information is identified in another part of the Federal Acquisition Regulation pertaining to determining whether a prospective contractor is "responsible" before awarding a contract to that contractor. These factors include capability, capacity, and past performance. 48 C.F.R. § 9.104-1. Adams contends that only by collecting

information related to these factors can the DOL meet the requirements of the Rule of Two.

Adams conflates a set-aside determination with a responsibility determination made pursuant to § 9.104-1; the former determines whether there is a reasonable expectation that at least two responsible small businesses will make an offer at fair market prices, while the latter determines whether an individual contractor is responsible in the context of awarding a contract. As the lower court noted, a set-aside determination requires only that the contracting officer have a reasonable expectation that likely small business offerors will survive a future responsibility determination. The DOL was not required to impose the requirements of the contractor-selection process onto the small business set-aside determination, and it properly applied the Rule of Two. Because its decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, it will not be disturbed. 5 U.S.C. § 706(2)(A).

Adams & Assocs. v. United States, 741 F.3d at 111 (internal citations omitted).

In the above captioned protest, FEMA relied on a Small Business Review Form, Form 700-22, and the Market Research Report to make a Rule of Two determination. In the Market Research Report, the report stated:

Since the current requirement is similar to the previous contract awarded in 2020, the Program Office used the following information from the previous Market Research: There are 47 companies registered in SAM that are scheduled as Security Services companies. Eleven were researched, including the current contract vendors. Four were not in business. One was not interested because of lack of resources to provide the requirement. One did not respond to our request for information. Only three companies responded to our request including the current two contractors.

Based on the responses to the prior solicitation, there were three responsible small businesses that responded that could have performed the work. Two received technical ratings of acceptable and one received a technical rating of marginal. All offered fair market prices. The previous requirement was for 600+ armed guards. Due to the closure of multiple facilities, the current requirement is significantly smaller, requiring fewer than 200 armed guards. Because there were three small businesses that could have performed the requirement with over 600 armed guards at fair market prices, we have a reasonable expectation that for this significantly smaller requirement offers will be obtained from at least two responsible small business concerns and that award will be made at fair market prices.

The checklist in the Market Research Report reflected that FEMA had reviewed "[o]ther recent market research," specifically the "2020 MR [market research] for Guard services in DR4339PR," the previous 2019 RFP, Request for Proposal No. 70FBR220R00000002,

as well as interviewed people in the industry and in the government, including "Experienced Security Managers and FEMA HQ SMEs [small and medium-sized enterprises]." (capitalization in original). The Market Research Report referenced the previous procurement and, as referenced above, the original Award Decision Memorandum for the 2019 RFP which made the award to AGAMA, was included in the Administrative Record in the above captioned protest. As the 2019 RFP's original Award Decision Memorandum was included in the Administrative Record in the above captioned protest, the court considers it as part of the information available to the agency in making the Rule of Two determination. Moreover, FAR 19.502–2(b), quoted above, contemplates that an agency can take into consideration previous procurements. The FAR at section 19.502–2(b)(2) states, in part, "[a]lthough past acquisition history and market research of an item or similar items are always important, these are not the only factors to be considered in determining whether a reasonable expectation exists." Id.; see also MCS Mgmt., Inc. v. United States, 48 Fed. Cl. 506, 512, 514 (2001). The Judge who decided Adams & Associates v. United States at the United States Court of Federal Claims, which was affirmed by the Federal Circuit, indicated:

> Additionally, it is not required or practical at this stage of the procurement process for the contracting officer to conduct a full responsibility evaluation. Fermont Div., Dynamics Corp., B–195431, 1980 WL 18035, 59 Comp. Gen. 533, 538–40 (1980). Rather, the contracting officer need only reasonably expect that likely offerors will "be capable of surviving a future responsibility determination." Greenleaf Const. Co., Inc. v. United States, 67 Fed. Cl. 350, 358 (2005).

Adams & Assocs., Inc. v. United States, 109 Fed. Cl. at 356; see also Adams & Assocs. v. United States, 741 F.3d at 111 ("As the lower court noted, a set-aside determination requires only that the contracting officer have a reasonable expectation that likely small business offerors will survive a future responsibility determination.").

The original Award Decision Memorandum for the 2019 RFP, which was the first in the series of awards for the Protective Service Officers and Patrolled Services for Puerto Rico, in making the award to AGAMA, included the table of the summary of technical ratings for each of the first four factors: 1. Work Plan, 2. Project Management Plan, 3. Quality Control Plan, and 4. Past Performance.

Summary of Technical Ratings
Table 1

| RATING CHART | | | | | |
|---|---|---|---|---|---|
| Offeror: | Factor 1 | Factor 2 | Factor 3 | Factor 4 | *Overall Factor Rating* |
| Offeror 1: [redacted] | Unsatisfactory | Unsatisfactory | Unsatisfactory | Neutral | **Unsatisfactory** |
| Offeror 2: Agma Security Service Inc. | Good | Satisfactory | Satisfactory | Neutral | **Satisfactory** |
| #3 Offeror 3: [redacted] | Unsatisfactory | Unsatisfactory | Unsatisfactory | Neutral | **Unsatisfactory** |
| Offeror 4: [redacted] | Unsatisfactory | Unsatisfactory | Marginal | Neutral | **Unsatisfactory** |
| Offeror 5: [redacted] | Unsatisfactory | Unsatisfactory | Unsatisfactory | Satisfactory | **Unsatisfactory** |
| Offeror 6: Ranger American | Good | Good | Good | Good | **Good** |
| Offeror 8: [redacted] | Marginal | Satisfactory | Satisfactory | Satisfactory | **Satisfactory** |
| Offeror 9: [redacted] [14] | Marginal | Marginal | Marginal | Satisfactory | **Marginal** |

---

[14] The SSEB explained that: "During the initial screening, Offeror 7 [redacted] was deemed ineligible for award. Offeror does not reside or primarily doing [sic] business in the disaster area in accordance with FAR 52.226-3 Disaster or Emergency Area Representation and therefore were [sic] not evaluated."

Table 2

| EMPIRICAL VALUES RATING CHART | | | | | | |
|---|---|---|---|---|---|---|
| *Offeror:* | *Factor 1* | *Factor 2* | *Factor 3* | *Factor 4* | *Total Empirical Value* | *Converted Empirical Value to Overall Rating* |
| #1 | 1 | 1 | 1 | 0 | **3** | Unsatisfactory |
| #2 [AGMA] | 4 | 3 | 3 | 0 | **10** | Satisfactory |
| #3 | 1 | 1 | 1 | 0 | **3** | Unsatisfactory |
| #4 | 1 | 1 | 1 | 0 | **3** | Unsatisfactory |
| #5 | 1 | 1 | 1 | 2 | **5** | Unsatisfactory |
| #6 [Ranger] | 4 | 4 | 4 | 4 | **16** | Good |
| #8[redacted] | 1 | 3 | 3 | 2 | **9** | Satisfactory |
| #9[redacted] | 1 | 1 | 1 | 2 | **5** | Marginal |

Table 3

| RATING CHART BREAKDOWN | | | |
|---|---|---|---|
| *Factors 1 - 3* | *Numerical Rating* | *Factor 4* | *Numerical Rating* |
| Superior | 5 | | |
| Good | 4 | Superior | 3 |
| Satisfactory | 3 | Satisfactory | 2 |
| Marginal | 1 | Unsatisfactory | 1 |
| Unsatisfactory | 1 | Neutral | 0 |

Table 4

| OVERALL RATING RANGE | |
|---|---|
| *Overall Rating* | *Rating Range* |
| Superior | 18 |
| Good | 14 to 17 |
| Satisfactory | 10 to 13 |
| Marginal | 6 to 10 |
| Unsatisfactory | 3 to 5 |

(all capitalization and emphasis for all charts in original; brackets added).[15]

---

[15] Although the 2019 RFP makes no mention of an "empirical values ratings" system, the contracting officer included the empirical values ratings chart in the original Award Decision Memorandum and changed the rating chart, as shown in Table 1, into the empirical values ratings, the rating chart breakdown, and the overall rating range, as indicated in Tables 2, 3, and 4.

46

As noted above, and as referenced in the Market Research Report, for the 2019 RFP, the original Award Decision Memorandum determined that there were four offerors who "were deemed technically acceptable," three of which were small businesses, AGMA, the original awardee, [redacted], and [redacted], and the fourth being Ranger American of Puerto Rico. AGMA and [redacted] were determined to be "Satisfactory," [redacted] was determined to be "Marginal," and Ranger American of Puerto Rico was determined to be "Good." Additionally, the original Award Decision Memorandum included a comprehensive analysis of each strengths, weaknesses, and deficiencies, if any, of each of the eight evaluated offerors, as well as an analysis of each of the offeror's proposals. Below are the evaluations for AGMA, Ranger American of Puerto Rico, [redacted], and [redacted], the only four offerors to propose technical proposal which was evaluated to be marginal or better.

Offeror 2: AGMA Security Service Inc [sic]                    Rating: Satisfactory

Offeror 2's proposal demonstrated a probability of success to support FEMA's requirement. The offeror had previous experience with FEMA but had no CPARS records. Offeror 2 provided in detail how they would execute the requirement, with a good workplan including a proper transition, good management considering most challenges, and a reasonable Quality Control (QC) Plan.

**Factor 1 - Workplan: Good**

Strengths include:
o Demonstrated the ability to make a seamless transition and accounted for the required services. (Section 1: Workplan, page 1, paragraph 2, 6; page 2 paragraph 1, 2; page 3, paragraph 3)
o Proper execution including a detailed description of a proper chain of command and a well-planned timeline (Section 1: Workplan, page 1 paragraphs 3-5, page 2 paragraph 4-6 [sic]
o Offeror demonstrates to have the capability to fulfill the staffing demand in this requirement (footnote page 2).

Weakness include:
o None

Deficiencies include:
o None

**Factor 2 – Project Management Plan: Satisfactory**

Strengths include:
o Demonstrated the ability to effectively manage the contract (Section 2: Project Management Plan in its entirety page 3-4).

o Offeror has a proper plan in place to fulfill staffing island-wide (Section 2: Project Management Plan page 3 paragraphs 5-6).
o Proper assigned supervision (Section 2: Project Management Plan page 4 paragraph 1-5).
o Detailed description of distribution of resources (Section 1: Workplan, page 1 last paragraph, continued page 2 first paragraph and page 2 footnote).

Weakness include:
o None

Deficiencies include:
o None


**Factor 3 – Quality Control Plan: Satisfactory**

Strengths include:
o Offeror has staff designated for Quality Control (Section 3: Quality Control Plan, page 5, paragraph 3).
o Good plan for physical inspections and reporting tools (Section 3, page 5, paragraph 2, 5, 6; page 6 all paragraphs; page 7, paragraphs 1-4).
o Good corrective actions plan Section 3, Paragraph 5-6; page 8, paragraph 1-4).

Weakness include:
o None

Deficiencies include:
o None

**Factor 4 – Past Performance: Neutral**

Strengths include:
o None

Weakness include:
o None

Deficiencies include:
o None

. . .

Offeror 6: Ranger American of Puerto Rico Inc [sic]          Rating: Good

Offeror 6 is the vendor for the current contract. They relied on their efficacy to execute the new contract to the "successful" execution of the current

contract. The offeror demonstrates the capability to comply with the requirement as established. The offeror demonstrates that they have vast staffing capabilities to meet requirements and beyond. A detailed Project Management Plan was provided. A rigorous training schedule was presented with a good command/field operations structure to complement. Offeror diligently provided the "Use of Force" policy and a sample of physical inspections spreadsheet they use to ensure PSO compliance.

**Factor 1 - Workplan: Good**

Strengths include:
o Offeror references effective modus operandum in current contract (Section: Introduction, page 1, paragraph 6).
o Offeror states a continuation of services would not require a transition (Section 1: Workplan, page 2, paragraph 2).
o Vast staffing capabilities (Section 1, page 2, paragraph 3).

Weakness include:
o None

Deficiencies include:
o None

**Factor 2 – Project Management Plan: Good**

Strengths include:
o Offeror presents in detail the contract management responsibilities, risk avoidance, and insurance of performance making the contract transition a seamless continuity of operations (Section 1: Workplan, page 2, paragraph 3).
o Good command and field operations structure (Section 2: Project Management Plan, sub-section Site Leaders, page 5 graph, paragraphs 1-3).
o Contingency plan set in place (Section 2, page 3, paragraph 4).

Weakness include:
o None

Deficiencies include:
o None

**Factor 3 – Quality Control Plan: Good**

Strengths include:
o The offeror demonstrates a rigorous Quality Control system in place (Section 3: Quality Control Plan, page 5, paragraph 1-2).

o Quality Control for this offeror includes monitoring processes, field inspections, supporting software, cost control software, reporting capacity, disciplinary strategies, and internal investigations (Section 3, sub-section Technology, page 8, paragraph 1).
o Monitoring documentation developed ensuring compliance (proposal attachment).
o Robust training schedule potentially maximizing quality of work (Section 3, page 6, paragraph 3; and attachment "Training [sic] Manuals protocol).

Weakness include:
o None

Deficiencies include:
o None

**Factor 4 – Past Performance: Good**

Strengths include:
o In CPARS, offeror has two evaluations where they are described as "very good" and exceptional in all categories on both.

Weakness include:
o None

Deficiencies include:
o None

Offeror 8: [redacted]                                    Rating: Satisfactory

Offeror 8's proposal stated they have the experience and capability to fulfill the requirements set forth in the SOW [statement of work]. In contradiction, the offeror also stated they currently do not possess the required staffing and they would conduct a recruitment event (within 90 days after execution) to fulfill the requirement. The proposal lacks a detailed transition process and fulfilling regional staffing. Good quality controls are in place but no disciplinary/corrective actions for PSO compliance are presented.

**Factor 1 - Workplan: Marginal**

Strengths include:
o Offeror states experienced capabilities to address the requirement (Section 1: Workplan, sub-section 4 Resources, page 2 paragraph 3).

Weakness include:
o Offeror states they currently do not have the staffing capability to address the requirement needing to recruit new employees to comply with the staffing requirement (Section 1: Workplan, sub-section VI, page 2, paragraph 1).

Deficiencies include:
o None

**Factor 2 – Project Management Plan: Satisfactory**

Strengths include:
o Offeror's under the Project Management section (pages 4-6) in the proposal demonstrates a thorough understanding of the requirements as outlined in the SOW.
o Offeror divided the island into 5 geographical areas with proper supervisory staffing (Section 2, Sub-section Executive Summary, page 4, paragraph 3).

Weakness include:
o No detailed transition plan incorporated in the proposal (Section 2, sub-section 7, page 3, paragraph 1-2).

Deficiencies include:
o None

**Factor 3 – Quality Control Plan: Satisfactory**

Strengths include:
o The offeror details the specific methods and processes involved in the QC processes with diligent standards (Section 3: Quality Control, page 7, paragraph 3).
o Good PSO performance matrix and field inspections (Section 3, sub-section Quality Evaluation Criteria, page 8 in its entirety).

Weakness include:
o No disciplinary action plan presented anywhere in Section 3, pages 7-8.

Deficiencies include:
o None

**Factor 4 – Past Performance: Satisfactory**

Strengths include:
o An offeror's customer provided the past performance questionnaire with satisfactory results.

Weakness include:
o None

Deficiencies include:
o None

Offeror 9: [redacted]                                    Rating: Marginal

Offeror 9's proposal demonstrates proper understanding to fulfill the requirements set forth in the SOW. The offeror mentions a contingency plan, and other required documentation and tasks to fulfill the requirement, but they failed to present the actual plans. Offeror states they would subcontract to achieve staffing levels which has shown to be a risk in Armed Guards contract. Good quality controls are in place but no disciplinary/corrective actions for PSO compliance are presented.

**Factor 1 - Workplan: Marginal**

Strengths include:
o Offeror demonstrates proper understanding of the requirement (Section Workplan in its entirety).

Weakness include:
o Offeror states subcontracting to fulfill requirement (Section 1: Workplan, page 2, paragraph [sic]

Deficiencies include:
o None

**Factor 2 – Project Management Plan: Marginal**

Strengths include:
o Offeror on "Section 2: Project Management Plan" the offeror establishes a clear plan to execute the requirement with proper chain of command (Section 2, page 6 paragraph 1, and page 7 in its entirety).

Weakness include:
o The offeror outlined some of the required management tasks in the Workplan; however, management tasks for proper execution of contract were not detailed anywhere in the proposal.

Deficiencies include:
o None

**Factor 3 – Quality Control Plan: Marginal**

Strengths include:
o Offeror states the development of a Quality Control Plan with some detail (Section 3: Quality Control Plan page 8, paragraph 1).

Weakness include:
o The Quality Control Plan lacks management of corrective actions; the offeror did not include the "Use of Force" policy and has no mention of disciplinary actions. Contingency plan is not included and talks about additional fees to cover the requirement if an abnormal situation arises (Section 34, sub-section Contingencies, page 8, paragraph 1).

Deficiencies include:
o None

**Factor 4 – Past Performance: Satisfactory**

Strengths include:
o A previous customer of Offeror #9 completed and returned to the CO [contracting officer] the Additional Quality Control Questionnaire with "Outstanding" results.

Weakness include:
o None

Deficiencies include:
o None

(emphasis in original). After the evaluations of the first four factors, the original Award Decision Memorandum for the 2019 RFP explained "[t]he price proposals for the remaining Offerors 2 [AGMA], 6 [Ranger American of Puerto Rico], 8 [redacted] and 9 [redacted] were evaluated separately from the Technical evaluation," and determined that "[t]hose Offerors that were deemed technically acceptable were notified via email that the performance period changed to one base period and a one-year option period, and a price revision request was issued to Offerors 2, 6, 8 and 9." The original Award Decision Memorandum included a chart of the revised prices of each of the four responsible offerors:

| OFFEROR NAMES | Qty Labor Hrs. | Revised Hour Rates | Revised Vehicles (3) Daily Rate | TOTAL |
|---|---|---|---|---|
| OFFEROR 2: AGMA Security Service Inc. [redacted] | 295,288 | $23.98 | $90.00 per vehicle | $14,359,040.54 |
| OFFEROR 6: Ranger American of PR, Inc. [redacted] | 295,288 | $29.07 | $70.00 | $17,321,257.11 |
| OFFEROR 8: [redacted] | 295,288 | $25.64 | $58.34 | $15,270,243.24 |
| OFFEROR 9: [redacted] | 295,288 | $28.25 | N/C | $16,683,772.00 |

The chart reflects that for the 2019 RFP, the lowest price was offered by AGMA, and the highest price was offered by Ranger American of Puerto Rico, with [redacted] and [redacted]in between. In the best value trade-off, the original Award Decision Memorandum determined although Ranger American of Puerto Rico offered a superior technical evaluation, that "there was no rational that substantiates paying a higher price to Ranger when the same services could be provided from AGMA." The original Award Decision Memorandum for the 2019 RFP concluded: "Based on the integrated assessment of all proposals in accordance with the specified evaluation factors, it is hereby recommended that the award be made to AGMA under contract No. 70FBR220C00000006. AGMA's proposal offers the best overall value to the Government and price is determined to be fair and reasonable."

Based on the information gleaned by the agency after issuing the original Award Decision Memorandum for the 2019 RFP,[16] it was reasonable in the protest currently

---

[16] As noted above, for the 2019 RFP, after the original Award Decision Memorandum and award to AGMA, Ranger American of Puerto Rico filed a protest at the GAO, and FEMA took corrective action, terminated AGMA's contract, issued a Revised Award Decision Memorandum, and made the award to Ranger American of Puerto Rico. The court refers to the original Award Decision Memorandum in the above analysis, because as the court previously determined in its December 29, 2020 Opinion:

AGMA's evaluation remained largely unchanged from the prior evaluation. FEMA again evaluated AGMA as "Good" for Factor 1, "Satisfactory" for Factor 2, "Satisfactory," for Factor 3, "Neutral" for Factor 4, with no "known past performance issues." The Revised Award Decision Memorandum noted that AGMA met "the minimum solicitation technical requirements," "AGMA received an overall rating of Satisfactory," and the "(AGMA) proposal was perfectly adequate." The Revised Award Decision Memorandum again concluded that AGMA offered a lower evaluated price than Ranger American of Puerto Rico. If Ranger American of Puerto Rico's claims about the failures of AGMA's proposal were the cause of the corrective action it was not articulated by the contracting officer, nor is there a reflection in the analysis after the corrective action. There is not even an

under review for the agency to conclude in the Market Research Report, that "[b]ased on the responses to the prior solicitation, there were three responsible small businesses that responded that could have performed the work. Two received technical ratings of acceptable and one received a technical rating of marginal**.**"

As noted above, the Federal Circuit in <u>Adams & Associates</u> stated, "'a reasonable expectation' that at least two responsible small businesses will submit bids at fair market prices is all that is required." <u>Adams & Assocs. v. United States</u>, 741 F.3d at 111. FEMA's Market Research Report for the solicitation under review was informed by the agency's experience with the 2019 RFP and the award process, provides sufficient evidence that the contracting officer had a "reasonable expectation" that "fair market prices" could be met with offers from "at least two responsible small business." <u>See id.</u>; <u>see also</u> <u>Res-Care Inc. v. United States</u>, 735 F.3d at 1390 (quoting <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d at 1368–69) ("A contracting officer's decision to set aside a contract for small businesses invokes 'highly deferential rational basis review.'").

Despite protestor Ranger American of Puerto Rico's contention that the agency "entirely failed to consider whether potential small business concerns are responsible or likely to offer fair market prices," FEMA's history with the 2019 RFP evaluations demonstrates that FEMA did have a reasonable expectation as to whether two or more small business could meet the criteria of responsibility and a fair price. The agency had previously made the first in a series of awards for the 2019 RFP to AGMA, which demonstrates that it believed AGMA to be responsible and could offer a fair price. FEMA also determined that two other small businesses, [redacted] and [redacted], offered technically acceptable proposals, and both [redacted] and [redacted] offered proposals

---

explanation for why corrective action was warranted in the above captioned protest in the Revised Award Decision Memorandum.

It is equally unexplained in the record before the court why the contracting officer reached a different conclusion in the Revised Award Decision Memorandum than the initial Award Decision Memorandum. Although the contracting officer referenced each technical factor, past performance, and price, and concluded that "Ranger's proposal is significantly stronger and offers the best-valued solution to the Government, and the price is determined to be fair and reasonable," the contracting officer made no effort to distinguish the new award decision from the original decision by the contracting officer awarding the contract to AGMA, or even compare the two decisions. In fact, the contracting officer did not even mention the initial award decision in her analysis. Additionally, there is no explanation for why FEMA did not give offerors a chance to submit revised proposals after the corrective action.

The Revised Award Decision Memorandum also retained mostly unchanged numerical ratings from the initial Award Decision Memorandum.

<u>AGMA Sec. Serv., Inc. v. United States</u>, 152 Fed. Cl. at 164–65.

for a lower price than Ranger American of Puerto Rico, reflecting a belief that the [redacted] and [redacted] were responsible offerors. Given the prior evaluations, it was reasonable for the agency to conclude to believe there would be two or more responsible offerors with fair market price offers. Ranger American of Puerto Rico also misstates the obligation of FEMA when making a Rule of Two determination, FEMA was not obligated "to consider whether potential small business concerns are responsible," rather "a set-aside determination requires only that the contracting officer have a reasonable expectation that likely small business offerors will survive a future responsibility determination." Adams & Assocs. v. United States, 741 F.3d at 111. FEMA, by virtue of the previous evaluations, had a reasonable expectation that two or more offerors would be small businesses that could likely survive a responsibility determination. See id.

Finally, Ranger American of Puerto Rico contends "[t]he agency's decision is also inadequately documented. The record lacks any explanation why FEMA issued numerous prior procurements for the same services in the same location on a full and open basis but then reversed course for the current RFP by restricting competition to small business concerns." Defendant correctly notes that "FAR 6.203 provides that '[n]o separate justification or determination and findings is required . . . to set aside a contract action for small business concerns.'" Defendant also acknowledges, "the documentation for the set-aside decision may have been improved."[17] The court notes that the while FEMA could have been more through and careful throughout the many phases of the procurements to procure Protective Service Officers and Patrolled Services for Puerto Rico and could have provided more information in the Market Research Report for the Solicitation, as noted above, the Market Research Report did explain that

> [b]ased on the responses to the prior solicitation, there were three responsible small businesses that responded that could have performed the work. Two received technical ratings of acceptable and one received a technical rating of marginal. All offered fair market prices. The previous requirement was for 600+ armed guards. Due to the closure of multiple facilities, the current requirement is significantly smaller, requiring fewer than 200 armed guards. Because there were three small businesses that

---

[17] As noted above, and given the time constraints as a result of the history of the procurements at the agency and the agency's lack of adequate planning earlier, the court did not grant defendant's request for remand and instead instructed FEMA to immediately begin the additional market research that it had planned to conduct during the proposed remand. On February 24, 2021, the defendant filed a status report which reflected that six offerors had responded to the additional market research undertaken by the agency and "[t]he responses indicate that all six companies are small businesses and have the capabilities to perform the services required in the Solicitation." Although the additional market research validated FEMA's decision to proceed with the procurement as a set-aside and the Rule of Two determination, as noted above, a determination for the Rule of Two is based on the information available at the time the decision is made, or in this case, after the January 26, 2021 Market Research Report. See Mgmt. & Training Corp. v. United States, 118 Fed. Cl. at 169.

could have performed the requirement with over 600 armed guards at fair market prices, we have a reasonable expectation that for this significantly smaller requirement offers will be obtained from at least two responsible small business concerns and that award will be made at fair market prices.

The checklist in the Market Research Report also reflected that FEMA had reviewed "[o]ther recent market research," specifically the "2020 MR for Guard services in DR4339PR," or the previous RFP, as well as "[i]nterviewed knowledgeable individuals in industry," and "[i]nterviewed knowledgeable individuals in Government." The court believes that there was sufficient documentation, even if not the model of superior documentation, for the agency to have made a Rule of Two determination for the current solicitation under review, and that the agency had sufficient information to explain why the agency considered it was appropriate to consider classifying the current contracted Protective Service Officers and Patrolled Services for Puerto Rico solicitation as one a small business could perform.

## CONCLUSION

As described above, based on the urgency described by the defendant, as indicated to the parties previously in the oral decision issued to all the parties, the court found that the agency's actions in setting aside the requirement for small businesses was not arbitrary or capricious. Protestor's motion for judgment on the Administrative Record and protestor's motion for injunctive relief were denied and defendant's and intervenor's motions for judgment on the Administrative Record were granted when the oral decision was issued by the court.[18] The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

---

[18] The parties, however, requested a written memorialization of the decision.